Snyderwine et al., Appellants, *v.* Craley.

Argued January 21, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Otis W. Erisman,* with him *William C. Ferguson, Jr.* and *Frank F. Truscott,* and *Truscott and Erisman,* for appellants.

*Thomas M. Garrity* and *Morris Gerber,* with them *David M. Jordan,* and *Wisler, Pearlstine, Talone & Gerber,* for appellees.

OPINION BY MR. JUSTICE JONES, May 28, 1969:

On January 3, 1966, the Board of Commissioners (hereinafter "Board") of Plymouth Township, a first class township in Montgomery County, voted by a two to one majority to appoint Bernard V. DiGiacomo the Township Solicitor. The Commissioners' action was taken pursuant to §1201 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, §1201, as amended, 53 P.S. §56201 (hereinafter "Code"), which prescribes that solicitors shall be appointed for a two year term. The statute further prescribes the compensation of the solicitor shall be fixed by the Board and details the nature and scope of the solicitor's duties.

In January of 1966, the Board was composed of three persons: Earle E. Craley, Paul W. Callahan and Heather A. Weatherill. At the time of Mr. DiGiacomo's appointment as Township Solicitor, he was a partner in the law firm of Fox, Differ, DiGiacomo and Lowe of which Mr. Callahan was an associate.[1] Before the vote on Mr. DiGiacomo's appointment was taken, Mrs. Weatherill called to Mr. Callahan's attention the provisions of section 1811 of The First Class Township Code.[2] Section 1811 requires that a township commissioner who is personally "interested to any appreciable degree, either directly or indirectly, in any contract for the sale or furnishing of any supplies or materials for the use of the township or for any work to be done

---

[1] In 1967, during Mr. DiGiacomo's term of office, Mr. Callahan was made a partner of the firm.

[2] Act of June 24, 1931, P. L. 1206, art. XVIII, §1811, 53 P.S. §56811.

for such township involving the expenditure by the township of more than three hundred dollars in any year" disclose his interest in such contract to the other commissioners and refrain from voting on any expenditure under the contract. Despite the objection of Mrs. Weatherill, Mr. Callahan voted in favor of Mr. Di-Giacomos' appointment and his vote was necessary to effect the appointment.

On March 14, 1966, the Board preliminarily adopted the General Fund Budget which included a provision in the amount of Four Thousand Five Hundred Dollars ($4,500.) for the solicitor's salary. This preliminary approval was voted unanimously on motion of Mr. Callahan, seconded by Mrs. Weatherill. At the subsequent monthly meeting of the Board on April 11, 1966, Mrs. Weatherill again cited §1811 of The First Class Township Code and registered her opposition to any payment of Township funds to Mr. Di-Giacomo. Again, Commissioners Craley and Callahan voted in favor of making such payments.

The following year at the regular meeting of the Board held on March 13, 1967, the Board, now a five-man body, voted unanimously to adopt preliminarily the 1967 General Budget Fund, which included an item of Seven Thousand Five Hundred Dollars ($7,500.) for the solicitor's salary and a Two Hundred Dollar ($200.) item for other legal expenses. At that time Commissioner Weatherill stated that she objected to the increase in the solicitor's salary, but would not withhold her support of the budget. The budget was subsequently approved on April 18, 1967, by a unanimous vote of the Board. Thus, on five separate occasions Mr. Callahan voted favorably with respect to employing or paying Mr. DiGiacomo, and, on two occasions, his vote was necessary to effect the action in question.

On January 3, 1968, the final day of Mr. Di-Giacomo's term of office, appellants, residents, electors and taxpayers of the Township, filed a complaint in equity in the Court of Common Pleas, Montgomery County. The complaint named as defendants Commissioners Craley, Callahan, Weatherill, DiSanto and Curson, Commissioner-elect Volpe and the Township. The appellants' complaint asked: (a) that Mr. Callahan be surcharged to the extent of the damage shown to have been sustained by the Township as a result of his violation of §1811 of The First Class Township Code; (b) that he be ousted from the office of township commissioner; (c) that all named defendants be enjoined from appointing Mr. Callahan, who, it was averred, was slated to succeed Mr. DiGiacomo as the Township Solicitor; and (d) such other relief as might be deemed proper and just.

On February 1, 1968, the appellees filed Preliminary Objections to the complaint, raising two defenses: (1) that no cause of action was stated since no contract within the meaning of §1811 was involved in the appointment or compensation of the solicitor of a first class township; and (2) that gross laches in instituting the complaint appeared on its face.

The court en banc, after argument, sustained the preliminary objections and dismissed the complaint. The instant appeal is from that order.

Appellants' original cause of action and their present appeal rest on the argument that the appointment of a solicitor of a first class township effects a contract "for work to be done for such township" which is governed by the provisions of §1811. We have not had prior occasion to construe §1811 or to define the scope of its coverage. An analysis of that section, read in the context of the entire Township Code, however, reveals that §1811 was not intended to, nor does it,

extend to the relationship between a first class township and its appointed solicitor.

Article XVIII of the Code in which §1811 is found empowers townships to make contracts and delineates the limitations on that power to contract. Thus section 1802, 53 P.S. §56802 provides that contracts or purchases involving expenditures of over $1,500 must be in writing and must be made only after advertisement and open bidding. Contracts for professional or personal service are exempted from the requirements as to bidding and advertisement, but the requirement that contracts be in writing is fully applicable to those contracts. Throughout article XVIII there is no suggestion that its provisions control services such as those performed by statutory officers such as the solicitor. The provisions of article XVIII focus on contracts for public work, construction, materials and supplies, require the execution of bonds for protection of labor and materialmen, establish standards for workmen's compensation, minimum wage requirements and nondiscriminatory hiring and mandate the preparation of specifications for plumbing, heating and the like. In addition to the prophylactic provisions of section 1811, the article also prohibits architects or engineers who participate in the planning of projects to enter bids on such work. There is nothing in article XVIII which suggests that its provisions were designed or intended to cover the relationship between solicitors and municipalities.

An analysis of the provisions of article XII dealing with the appointment of solicitors indicates that no contract within the contemplation of §1811 was contemplated. Section 1201 provides that the Board of Commissioners is to "elect" a township solicitor for a two-year term and "fix" the solicitor's salary. These are not the normal terms of contractual relationship. Moreover, there is no suggestion that a written con-

tract is necessary to the appointment of the solicitor, although such a contract would be required if article XVIII and §1811 in particular were controlling. Similarly, other articles of the Code set out in some detail controlling provisions as to the appointment, compensation, duties and responsibilities of enumerated township officers—commissioners, treasurer, secretary, auditors, controller and engineer, as well as solicitor. These provisions give no evidence that §1811 is applicable to such appointments.

Furthermore, the general provisions of the Code relating to township officers provide for the removal of negligent officers by a court upon complaint of one hundred citizens of the relevant municipalities. (53 P.S. §55604). Again, this provision is hardly consistent with a contention that the relationship between solicitor and municipality is one grounded in contract and governed by §1811.

A reading of §§1201 and 1811 in the context of The First Class Township Code yields no support for appellants' basic contention and it is perhaps symptomatic that at no point in their brief do the appellants advert to §1201 or endeavor to explain why the appointment of a solicitor under its terms is in fact governed by §1811.

The conclusion that DiGiacomo's appointment as solicitor entailed no contractual relationship is further supported by the decisions of this Court setting forth the standards by which public officers are distinguished from public employees. It is well-established that the relationship between a public officer and the governmental unit he serves is not based on contract. *Naef v. Allentown*, 424 Pa. 597, 227 A. 2d 888 (1967); *Vega v. Burgettstown Borough*, 394 Pa. 406, 147 A. 2d 620 (1958). In the *Vega* case, the court defined a public officer as one appointed or elected to perform duties of a grave and important character for the bene-

fit of the public during a definite term and in return for a stipulated compensation to be paid from the public treasury. To like effect, see *Commonwealth ex rel. Foreman v. Hampson,* 393 Pa. 467, 143 A. 2d 369 (1958). DiGiacomo was appointed to office here for a specified statutory period and his compensation was fixed by the Board according to statutory procedures. Moreover, he was vested by statute with significant responsibilities. Section 1203 of the Code (53 P.S. §56203) gives township solicitors general control and superintendence of all township law matters. More specifically, §1204 (53 P.S. §56204) provides that the solicitor shall prepare all bonds, contracts, obligations and leases to which the township is a party; commence, prosecute and defend all actions or suits in which the township is a participant; and do all professional acts required by the commissioners. Clearly such acts are far from ministerial and impose significant responsibilities on the solicitor. A township would be hard pressed to function should such acts not be performed; it could not function well if such duties were ineptly handled. In the *Naef* case, supra, this Court found that the solicitor of a third-class city was a public officer within the meaning of article VI, §4 of the Pennsylvania Constitution. The statutory definition of the duties of a solicitor in such a city, Act of June 23, 1931, P.L. 932, §1604, 53 P.S. §36603, is a virtual carbon copy of §1204 setting forth the duties of a township solicitor. We fail to see why the findings in the *Naef* case are not equally apposite here.

While it were far better had Mr. Callahan refrained from voting for the appointment as Township Solicitor of a partner in the law firm of which he was an associate, Mr. Callahan's action in voting for such appointment and the emoluments attached thereto did not violate the Code provisions *as drawn* and the court

below properly sustained the preliminary objections on that ground.

Order affirmed.

Mr. Justice ROBERTS concurs in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.