Richard A. Ballou, Petitioner *v.* State Ethics Commission et al., Respondents.

Argued September 9, 1980. Reargued December 10, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MAC-PHAIL, WILLIAMS, JR. and PALLADINO.

*Victor L. Drexel,* for petitioner.

*Sandra S. Christianson,* General Counsel, for respondent, State Ethics Commission.

*Michael L. Harvey,* Deputy Attorney General, with him *Robert B. Hoffman,* Deputy Attorney General, *Allen C. Warshaw,* Deputy Attorney General,

Chief of Civil Litigation, and *Harvey Bartle, III,* Acting Attorney General, for respondent, Harvey Bartle, III, Acting Attorney General.

OPINION BY JUDGE ROGERS, January 22, 1981:

The Act of October 4, 1978 (Ethics Act), P.L. 883 65 P.S. §401 *et seq.* requires public officers and employees annually to file statements of their financial interests.[1] Richard D. Ballou has filed a Petition for Review addressed to our original jurisdiction seeking injunctive and declaratory relief from this requirement which The State Ethics Commission, the agency charged with enforcing the Ethics Act, has by regulation declared applies to municipal solicitors. Mr. Ballou who serves as solicitor to a county coroner, a municipal authority and several townships, raises questions as to the applicability of the Ethics Act to municipal solicitors and the constitutionality of the financial disclosure requirements. The Ethics Commission, contending that none of Mr. Ballou's attacks has merit, has filed preliminary objections in the nature of a demurrer.[2]

Mr. Ballou first says that he is not a public employee but an independent contractor. Section 2 of the Ethics Act, 65 P.S. §402, defines a public employee as:

Any individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a non-ministerial nature with regard to:

(1) contracting or procurement;

---

[1] Section 4, 65 P.S. §404 requires public employees and public officials annually to file statements of financial interests. The statement is described in Section 5, 65 P.S. §405.

[2] Enforcement of the Act against Mr. Ballou was preliminarily enjoined.

(2) administering or monitoring grants or subsidies;

(3) planning or zoning;

(4) inspecting, licensing, regulating or auditing any person; or

(5) any other activity where the official action has economic impact of greater than de minimus nature on the interest of any person.

The phrase used—''individual employed by the Commonwealth''—is clearly meant to embrace persons so employed without regard to whether the legal relationship is that of servant or of independent contractor. The Ethics Act addresses the mischief of real or apparent violation of the public trust by those engaged in taking or recommending official action; it is not concerned with the often finicky and precious considerations which attend the process of distinguishing a servant from an independent contractor. When the Ethics Act speaks of employees it refers to all persons in the employ of the public who ''take or recommend official action.'' When the Legislature wishes its statutes to reach only servants, it can do so. See e.g. Section 104 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §22.

Petitioner next says that he is not a public employe because his duties as township solicitor do not include responsibility for recommending or advising official action. This view of the role of municipal solicitor does not do it justice. A township solicitor is a public officer ''elected to perform duties of a grave and important character for the benefit of the public during a definite term and in return for a stipulated compensation to be paid from the public treasury.'' Snyderwine v. Craley, 434 Pa. 349, 354-355, 254 A.2d 16 (1969).

The Second Class Township Code[3] provides that: The law matters of the township shall be under the superintendence, direction, and control of the township solicitor. . . .

53 P.S. §65581.

Moreover, he

shall prepare or approve such bonds, obligations, contracts, leases, conveyances, ordinances and assurances to which the township may be a party; he shall commence and prosecute all actions brought by the township . . . as well as defend all actions or suits against the township . . . and shall do every professional act incident to the office which he may be authorized or required to do by the board of supervisors or by any resolution. . . .

53 P.S. §65582.

In describing these specific responsibilities of the township solicitor our Supreme Court has said:

Clearly such acts are far from ministerial and impose significant responsibilities on the solicitor. A township would be hard pressed to function should such acts not be performed; it could not function well if such duties were ineptly handled.

*Snyderwine v. Craley, supra* at 355, 254 A.2d at 20.

Further, an attorney's obligation to his municipal client, as to any other client, includes that of assisting in determining the client's future action. *See* Code of Professional Responsibility, Ethical Consideration EC 7-3. When a solicitor advises his municipal client to accept or reject a proposal for settling a lawsuit he is clearly "recommending offi-

---

[3] Act of May 1, 1933, P.L. 103, §581, *as amended.*

cial action of a non-ministerial nature . . . [which] has economic impact of greater than de minimus nature on the interests of any person.''

Mr. Ballou next contends that the financial disclosure requirement of the Ethics Act unconstitutionally impinges on his right of privacy. We upheld the statute against this attack in *Snider v. Shapp,* 45 Pa. Commonwealth Ct. 337, 405 A.2d 602 (1979), and *Pennsylvania State Association of Township Supervisors v. Thornburgh,* 45 Pa. Commonwealth Ct. 361, 405 A.2d 614 (1979); and there is nothing which needs to be added to Judge WILKINSON's discussion of the point in those cases.

Finally, Mr. Ballou says that the financial disclosure provisions of the Ethics Act as applied to attorneys is unconstitutional as an infringement on the Supreme Court's exclusive power to govern the conduct of persons privileged to practice law in Pennsylvania. We agree.

It has long been settled as a matter of fundamental law not necessary to be recorded in the State Constitution, that the Supreme Court has inherent and exclusive power to govern the admission, conduct and discipline of attorneys. *Petition of Splane,* 123 Pa. 527, 16 A. 481 (1889); and that a statute which would encroach on that power ''must be regarded as a vain attempt by the Legislature to exercise a power which it does not possess.'' *Hoopes v. Bradshaw,* 231 Pa. 485, 487, 80 A. 1098, 1099 (1911). When the Judiciary Article of the Pennsylvania Constitution was revised in 1968, the Supreme Court's inherent and exclusive power, until then implicit as a fundamental matter, was made explicit by Article V, Section 10(c):

The Supreme Court shall have the power to prescribe general rules governing practice,

procedure and the conduct of all courts . . . and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch. . . . All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

The Supreme Court has declared the meaning of Article V, Section 10(c) in its Rule of Disciplinary Enforcement No. 103:

The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which shall supersede all other court rules and statutes pertaining to disciplinary enforcement heretofore promulgated.

Lately, in a case involving its own rule-making procedures vainly attempted to be regulated by the Legislature, the Supreme Court has written:

[T]he separation of powers doctrine has historically protected the judiciary against incursions. . . . [I]t has been recognized for many years that regulating bar admissions and disciplining members of the bar are as much judicial functions and as protected against legislative incursion as are for instance, adjudications issued in traditional adversary litigation.

*In Re 42 Pa. C. S. §1703,* 482 Pa. 522, 530, 394 A.2d 444, 449 (1978).

Most recently, the Supreme Court struck down as applied to former judges Section 3(e) of the Ethics Act forbidding resigned officials from practicing be-

fore the agency of their former association. *Wajert v. State Ethics Commission,* Pa. , , 420 A.2d 439, 442 (1980). The Supreme Court declared that Section 3(e) was "an infringement on [its] inherent and exclusive power to govern the conduct" of attorneys, and that "[m]oreover, that power has been specifically exercised to deal with the mischief the statute attempts to address in the Code of Professional Responsibility." Canon 5 of the Code concerns conflicts of interest. In numerous so-called Ethical Considerations and Disciplinary Rules Canon 5 describes occasions of conflict which attend the practice of law and provides the required standards for meeting them. The purpose of all this material is stated in Ethical Consideration 5-1:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

This purpose is exactly that of the Ethics Act—to avoid real or apparent conflicts of interest. *See* Section 1, 65 P.S. §401. The Supreme Court has also promulgated Rules of Disciplinary Enforcement providing for disbarment, suspension and other forms of discipline by the Supreme Court or its appointed Disciplinary Board for violations of its Disciplinary Rules.

With respect to the precise point of disclosure, Disciplinary Rule 5-101 provides that a lawyer shall not accept employment if his judgment may be affected by his own interests, financial or otherwise "except with the consent of his client after full dis-

closure''; and Disciplinary Rule 5-107 forbids the lawyer from accepting anything of value from a person other than his client related to his representation of the client, again ''except with the consent of his client after full disclosure.''

In short, the subject of conflict of interest, including disclosure of financial interest, has been fully regulated with respect to attorneys by the Supreme Court.

Section 4 of the Ethics Act, applied to attorneys, infringes upon the Supreme Court's inherent and exclusive power to regulate the conduct of attorneys and violates the State Constitution. We therefore overrule The State Ethics Commission's preliminary objections.

ORDER

AND Now, this 22nd day of January, 1981, the preliminary objections of The State Ethics Commission in the nature of a demurrer are overruled.

---

DISSENTING OPINION BY JUDGE CRAIG:

We cannot overlook the point that Pa. Const. art. V, §10(c), as adopted by the citizens of the Commonwealth to invest the Supreme Court with the power of governance over the conduct of all courts, concludes by stating:

All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

That sentence makes clear that legislation relating to municipal solicitors, as part of the class of all public officials, is not barred except as it may conflict with judicial rules of legal ethics. Although the exclusive aspects of the judicial power may be, as the majority

opinion says, "a matter of fundamental law not necessary to be recorded in the State Constitution," if there is recorded in the constitution a provision that consistent laws may co-exist with judicial rules, that provision must be recognized.

The financial disclosure provisions of the Ethics Act do not conflict with the provisions of the Code of Professional Responsibility which require attorneys to declare and eschew conflicts of interest. The financial disclosure provisions of the statute implement the canons of ethics in a consistent way. Public disclosure of solicitors' interests would serve to inform the public, who have the right to know when bias might sway a solicitor's official advice, the importance of which has been rightly recognized in the majority opinion here.

Most solicitors are conscientious about preventing conflicts of interest, as are most other public officers and employees. A law which requires disclosure by legislators, who act collectively, and by administrators, who act ministerially, appropriately may also require like disclosure by solicitors, who act individually to render opinions which significantly affect determinations by public agencies.

*Wajert v. State Ethics Commission,* Pa. , 420 A.2d 439 (1980) is distinguishable. Application of the Ethics Act to shut the door of a court against the practice of law therein by an attorney is clearly in conflict with the actual judicial action which explicitly provided for the admission of that very attorney to practice before that court.

However, until the Supreme Court makes express provision for financial disclosure by solicitors, the Ethics Act disclosure requirement is not inconsistent and therefore is not ousted by the governing provision of the constitution.