Borough of Brookhaven, Appellant *v.* The Zoning Hearing Board of the Borough of Brookhaven and Manuel M. Luz, Appellees.

Argued March 3, 1981, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG, MACPHAIL, WILLIAMS, JR. and PALLADINO.

*James P. Gannon, Beagan, Gannon & Barnard,* for appellant.

*Vincent B. Mancini,* with him *Robert James Jackson, Kassab, Cherry, Curran & Archbold,* for appellee, Manuel M. Luz.

OPINION BY JUDGE CRAIG, April 10, 1981:

In this zoning case, the Borough of Brookhaven questions an order, by the Court of Common Pleas of Delaware County, which quashed the borough's appeal from a decision of the Brookhaven Borough Zoning Hearing Board (board) on the ground that the appeal was not timely, under *Foltz v. Zoning Hearing Board of Monroeville*, 13 Pa. Commonwealth Ct. 309, 318 A.2d 410, 412 (1974), because filed more than thirty days after a date of deemed approval under Section 908(9) of the Pennsylvania Municipalities Planning Code (MPC),[1] the section which mandates such an approval where the board decision has not been issued within forty-five days after the last hearing date.

Dr. Manuel M. Luz, the landowner/applicant, had applied to the board for permission to use part of his home in a residential district as a dentistry office, either as an accessory use or by way of variance.

The board, pursuant to a hearing held on January 4, 1979, issued a written decision on March 12, 1979, granting the variance requested.

The borough's appeal from that decision to the court of common pleas was dated April 4, 1979, a date which was less than thirty days after the March 12 issuance of the board's written decision, but more than thirty days after February 18, 1979, which would be the date of deemed approval if the landowner's application were deemed to be approved under the MPC.

Here the timeliness of the borough's appeal depends upon whether counsels' agreement on the record, at the board hearing, was legally effective to extend the board's decision deadline to March 12, 1979 under the last clause of Section 908(9), which lifts the forty-five day time limit where "the applicant has agreed in writing to an extension of time."

---

[1]Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10908(9).

We quote from the record the agreement made by counsel (Mr. Doyle is the board's solicitor, Mr. Noel is the attorney for the landowner here, and Mr. Kelly is the attorney for an applicant in a companion case):

> · MR. DOYLE: Before recess, while both applicants are here, this subdivision, I think we are going to continue this meeting tonight until the Notes of Testimony have been transcribed and lodged. All right, so that begins our 45 day count from when we receive the Notes of Testimony from the Court Reporter?
>
> MR. KELLY: That is acceptable.
>
> MR. DOYLE: Is that acceptable to both counsel? They are indicating their acquiescence.
>
> MR. KELLY: Yes, that is acceptable.
>
> MR. NOEL: Yes.

Therefore, the specific issue is whether such an extension agreement made by the applicant's counsel on the record constitutes an agreement "in writing," or whether such an agreement is ineffective unless embodied in a writing other than the hearing transcript.

There is no doubt that such agreement made in oral form outside the hearing would be ineffective. By the same token, a proposal among counsel at the hearing, expressed upon the record, to enter into an extension agreement *to be subsequently evidenced by a writing* is not effective unless and until it is reduced to writing as proposed. That was the situation in *DePaul Realty Co. v. Borough of Quakertown*, 15 Pa. Commonwealth Ct. 16, 324 A.2d 832 (1974), involving MPC §508(3), which governs subdivision control decision date extensions in the same terms as used by Section 908(9), where we stated:

> [A]lthough the record clearly indicates an agreement by counsel . . . to extend the time, and that this agreement would be evidenced by a

writing, no such written extension was ever made, and therefore, no such extension is involved in this case. Whether one observes this action of counsel as a sharp practice or not, the fact remains that the Borough should have protected itself if it was relying upon the extension since the M.P.C. clearly requires such extensions to be written.

15 Pa. Commonwealth Ct. at 22, 324 A.2d at 835 (1974). The present case presents a somewhat different question because here we have, *not* a mere concurrence as to developing a subsequent written agreement, but an agreement of record consummated by counsel.

We conclude that it would be unsound to view counsel's agreement of record as other than an agreement in writing. Attorneys, conducting zoning hearings with full consciousness of the importance of the record they are making, can be expected to understand that their statements and agreements are becoming part of the written stenographic record mandated by MPC §908(7), just as fully as they realize that, when they dictate a contract to a secretary, they are engaged in the creation of a writing. As members of the bar they can also expect that the written expression of their agreement will be part of the record certified to court under MPC §1008(2), 53 P.S. §11008(2), at which juncture it may well be germane, as here.

Our interpretation, confined to such agreements consummated by counsel in the "open court" context of the hearing, comports with the conviction, traditionally accepted at the bar, that commitments made in "open court" by an attorney, as an officer of the tribunal, are solemnly binding. Just as counsel knows that the record will be the official embodiment of the crucial question and answer on which the entire case may depend, counsel must be required to respect the record as the graphic manifestation of a commitment.

The importance of an agreement on the record is underscored by our Pa. R.A.P. 3122, which states that we will not recognize oral agreements between attorneys *if disputed* unless they are "made in open court concerning a matter then under consideration." To the same effect is Pa. R.C.P. No. 201, containing an exemption, from the requirement that attorneys' agreements on the business of court be in writing, with respect to "agreements at bar" when "noted by the Prothonotary upon the minutes or by the stenographer on his notes."[2] Of course, these rules can be viewed in two ways: formalistically, the exemption can be read as implying that the agreement at bar is not considered as a written one; realistically, the rules accord to the agreement at bar the force and effect of a writing.

In view of this court's decision in *Ballou v. State Ethics Commission,* 56 Pa. Commonwealth Ct. 240, 424 A.2d 983 (1981), stating the principle that our Supreme Court has exclusive power to govern the conduct of attorneys, our interpretation of this MPC provision, as applied to attorneys, should be consistent with the policy of the above-noted judicial rules, giving attorneys' record commitments the effect of written agreements.

The MPC requirement here is not similar to a Statute of Frauds; there is no requirement that the writing be signed by the party to be charged.[3] Nor has any

---

[2] The significance of attorneys' agreements is such that the Pennsylvania Supreme and Superior Courts, even where attorneys have granted oral time extensions outside of court, have, despite Pa. R.C.P. No. 201, recognized the agreement for the purpose of opening a judgment. *Britton v. Continental Mining & Smelting Corp.,* 366 Pa. 82, 76 A.2d 625 (1950) ; and *see Welzel v. Link-Belt Co.,* 154 Pa. Superior Ct. 66, 35 A.2d 596 (1944).

[3] The lack of a signature ensures that an agreement at bar will not satisfy the Statute of Frauds. *See Gogel v. Blasofsky,* 187 Pa. Superior Ct. 32, 142 A.2d 313 (1958) (oral settlement agreement made by attorneys outside of court, subsequently announced by counsel in court in connection with a continuance).

question been raised as to the power of counsel to bind the applicant.

The obvious purpose of the statutory requirement for a writing is served by the view here adopted. With an agreement of record, the court is spared the possibility of the credibility questions which could arise if oral agreements, allegedly made by counsel or parties extrajudicially, were to be disputed as to their existence.[4] Of course, the terms of an agreement of record, although admitted as to wording, could be sufficiently ambiguous as to require interpretation, as with any writing. Moreover, just as there can be a dispute with respect to correctness of the content of any writing, there can be objections to the accuracy of a transcript, but our practice is that such a dispute is inevitably settled by the tribunal before whom the record was made, not involving the credibility problems of extrajudicial statements. *See* Pa. R.A.P. 1922(a), (c). Significantly, the landowner here has not disputed the authenticity of the agreement of record quoted above.

Thus when counsel is willing to place the agreement upon the written adjudicative record, foregoing any intention to embody it further in an external paper, the statutory demand for a writing is satisfied.

We therefore conclude that the agreement was effective to extend the deadline for the board's decision as stated, until the forty-fifth day following the transcription and lodging of the testimony, which day was apparently March 12, 1979. The borough's appeal of April 4, being filed within less than thirty days thereafter, was timely and hence within the jurisdiction of the court of common pleas.

---

[4] When counsel are dealing outside of court, the difficulties of determining whether or not any agreement was made can be considerable, as illustrated by *Hahnemann Medical College and Hospital of Philadelphia v. Hubbard*, 267 Pa. Superior Ct. 436, 406 A.2d 1120 (1979).

We also must reject the other reason presented by the landowner for quashing the borough's appeal, the view that the borough could not be considered a "party aggrieved" with standing to appeal to court under MPC §1007, 53 P.S. §11007, urged upon the basis that borough witnesses before the zoning hearing board had described conditions which should accompany any variance and such conditions were in fact attached by the board. We believe this point is governed by our decision in *Lower Paxton Township v. Fieseler Neon Signs*, 37 Pa. Commonwealth Ct. 506, 391 A.2d 720 (1978) where we pointed out[5] that the MPC imports that a municipality must be deemed to be "interested in the proper enforcement and application of its zoning ordinance." *Id.* at 512, 391 A.2d at 723. A municipality's interest in having its regulation remain free from variances is, we believe, sufficiently overriding that its standing should not depend upon nice distinctions as to whether the municipality, by a variance grant, has received all in the way of a compromise that its representatives may have proposed. The fact that the township did not participate before the zoning hearing board in the *Lower Paxton Township* case, while the borough here did, does not make that principle inapplicable to this case; if anything, Brookhaven Borough's participation before the board strengthened its standing to be a party appellant.

We will reverse the decision on the motion to quash and remand the case for consideration of the merits of the variance grant.

ORDER

Now, April 10, 1981, the order of the Court of Common Pleas of Delaware County at No. 79-5183 dated

5. We also pointed out that the standing question is not a jurisdictional one. *Witney v. Lebanon City*, 369 Pa. 308, 85 A.2d 106 (1952).

November 14, 1979 is reversed, and this case is remanded for further proceedings in accordance with the opinion herein.

Judge WILKINSON, JR. did not participate in the decision in this case.

Judge MENCER dissents.