Pennsylvania Public Utility Commission Bar Association by Its President, Michael C. Schnierle and Vice President, Daniel P. Delaney, Petitioner v. Richard Thornburgh, Governor of the Commonwealth of Pennsylvania et al., Respondents.

Argued June 3, 1981, before President Judge CRUMLISH and Judges ROGERS, BLATT, MACPHAIL and PALLADINO. Judges MENCER, WILLIAMS, JR. and CRAIG did not participate.

*John F. Povilaitis,* Assistant Attorney General, with him *Louise Russell Knight,* Assistant Attorney General, for petitioner.

*William S. Rawls,* Deputy Attorney General, with him *Gregg H. S. Golden,* Deputy Attorney General, *Allen C. Warshaw,* Counsel, and *Sandra S. Christianson,* General Counsel, for respondents.

OPINION BY JUDGE MACPHAIL, September 28, 1981:
The Pennsylvania Public Utility Commission Bar Association (Association) filed a petition for review in our original jurisdiction in the nature of a petition for a declaratory judgment seeking to hold Section 3(e) of the Act of October 4, 1978 (Ethics Act), P.L. 883, 65 P.S. §403(e), unconstitutional as applied to the Association's members. Simultanteously, the Association filed an application for summary *relief* under the provisions of Pa. R.A.P. 1532(b). We denied that motion on March 12, 1981. Thereafter, Respondents[1] filed answers to the petition[2] whereupon the Association filed a motion for summary judgment. Affidavits were submitted by the Association and Respondents in support of their respective positions. It is the disposition of the Association's motion for summary judgment that is before us now.

### Factual Background

The Association is composed of persons who are employed as assistant counsel to the Pennsylvania Public Utility Commission. Each member of the As-

[1] Governor Richard Thornburgh, the State Ethics Commission, Attorney General Leroy S. Zimmerman and Dauphin County Distict Attoney Richad A. Lewis.

[2] No answer was filed by the District Attorney of Dauphin County.

sociation is also a member of the Bar of the Commonwealth of Pennsylvania and subject to the Code of Professional Responsibility and the Pennsylvania Rules of Disciplinary Enforcement adopted by the Supreme Court of Pennsylvania. Affidavits of individual members of the Association indicate that at the termination of their employment with the Public Utility Commission (P.U.C.) it is their desire to perform services for clients involving proceedings before the P.U.C. Two former employees of the P.U.C. who served as assistant counsel requested legal opinions from the State Ethics Commission (Commission) regarding the application of Section 3(e) of the Ethics Act to services they desired to perform for clients, which services are similar in nature to those described by members of the Association in the instant proceedings. Counsel for the Commission advised the former employees that only those professional services which may involve the use of personal influence with former associates were barred by the Ethics Act and that other professional services such as the preparation of briefs and background services to clients would not be barred.

The Association contends that as applied to its members, Section 3(e) of the Ethics Act is 1) an impermissible invasion of the legislature into the exclusive power and authority of the Supreme Court of Pennsylvania and 2) a violation of the due process clause of Article I, Section 1 of the Pennsylvania Constitution and the 14th Amendment of the United States Constitution.

### Procedural Issues

This Court has previously stated that a motion for summary judgment was unavailable as a procedural device in declaratory judgment actions because there was no provision for summary judgment in the Uni-

form Declaratory Judgments Act.[3] *Laspino v. Rizzo,* 40 Pa. Commonwealth Ct. 625, 398 A.2d 1069 (1979). With the subsequent repeal of the Uniform Act, however, and the adoption of the Declaratory Judgments Act[4] and the promulgation of Pa. R.C.P. Nos. 1601-1604, it is necessary for us to review our prior case law on this matter. The legislature took the opportunity in the new Declaratory Judgments Act to express its intention that henceforth, declaratory judgments were additional and cumulative to all other available remedies and that the purpose of the new legislation was remedial. 42 Pa. C. S. §7541. The fair implication from such statutory language is that declaratory judgment proceedings are a desirable way of resolving legal disputes of the nature described in Section 7532, 42 Pa. C. S. §7532 of the new legislation.

Pa. R.C.P. No. 1601(a) provides that practice and procedures under the new Act shall follow the rules governing an action in equity and Pa. R.C.P. No. 1501 provides that the procedure in an action in equity shall be in accordance with the rules relating to an action in assumpsit unless otherwise provided. The rules governing actions in assumpsit, of course, do provide for a motion for summary judgment. Pa. R.C.P. No. 1035.

Significantly, whereas the legislature did set forth procedures for declaratory actions in the Uniform Act they omitted procedural language in the new legislation thus prompting our Supreme Court to promulgate the new rules of procedure.

In view of these developments and the mandate of Pa. R.C.P. No. 126 that we should interpret the rules

---

[3] Act of June 18, 1923, P.L. 840, *as amended, formerly* 12 P.S. §831 *et seq.,* repealed by Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a)[1063].

[4] Act of July 9, 1976, P.L. 586, *as amended,* 42 Pa. C. S. §7531-7541.

of procedure to provide a "just, speedy and inexpensive determination of every action or proceeding," we now hold that a motion for summary judgment is appropriate in declaratory judgment proceedings.

The Commission also raises the issue of whether we have jurisdiction to entertain this motion for summary judgment in view of the facts that we had previously denied a motion for summary relief and that the Association took no action to open the "judgment" under the provisions of Pa. R.A.P. 1532(b). The argument lacks merit for the simple reason that we did not enter any judgment in our order of March 12, 1981. Rather, we denied an application for summary relief. The denial of summary relief is certainly no bar to a subsequent motion for summary judgment after the pleadings are closed. An application for summary relief and a motion for summary judgment are two separate procedural devices employed at different stages of the proceedings. It is quite possible that a court after reviewing all of the pleadings, affidavits, interrogatories, etc. may come to a conclusion that summary judgment should be granted, even though summary relief had previously been denied.

### Substantive Issues

Our Court has delineated the following standards before summary judgment may be entered: 1) the case must be clear and free from doubt; 2) the moving party must prove that there is no genuine issue of material fact to be tried and that it is entitled to judgment as a matter of law; and 3) the record must be viewed in the light most favorable to the non-moving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *J. Berman and Sons, Inc. v. Department of Transportation*, 21 Pa. Commonwealth Ct. 317, 345 A.2d 303 (1975).

A careful review of the answers to the petition for review reveals that Respondents have not denied any *factual* allegations in the petition. Even the affidavits submitted by the parties failed to demonstrate any dispute as to a genuine issue of material fact. Indeed, very little, if any, argument has been made by the Respondents that there is a factual issue which must be resolved before this case can be decided on its merits. Accordingly, we conclude that there is no such issue.

Quite obviously, there is a considerable difference of opinion as to what the law is and as to whether or not the Association's case is clear and free from doubt. As we have noted, the Association has advanced two theories in support of their motion; the impermissible invasion of the legislature into an area within the inherent and exclusive authority of our Supreme Court and the alleged unconstitutionality of the statutory enactment on due process grounds.

Although Respondents have attempted valiantly to distinguish prior cases in this Court and one pertinent Supreme Court decision, that case law is overwhelmingly in support of the Association's first contention. It is true, as contended by Respondents, that *Kremer v. State Ethics Commissions,* 56 Pa. Commonwealth Ct. 160, 424 A.2d 968 (1981) and *Ballou v. State Ethics Commission,* 56 Pa. Commonwealth Ct. 240, 424 A.2d 983 (1981) dealt specifically with that part of the Ethics Act[5] which requires the filing of financial disclosure forms. Nevertheless, the broad language of Judge ROGERS, who authored both opinions, must be given great weight in the disposition of the issue now before us. In *Kremer* he wrote for the majority of our Court:

> [T]he Supreme Court has and has exercised inherent and exclusive power to regulate the con-

---

[5] Section 4 of the Ethics Act, 65 P.S. §404.

duct of judges, *including the subject of real or apparent conflicts of interest,* and . . . the financial disclosure provisions of the Ethics Act *are unconstitutional* for impinging on that power. . . . (Emphasis added.)

56 Pa. Commonwealth Ct. at 168, 424 A.2d at 971. In *Ballou* Judge ROGERS wrote for a majority of the court:

> In short, the subject of conflict of interest, including disclosure of financial interest, *has been fully regulated with respect to attorneys* by the Supreme Court. (Emphasis added.)

56 Pa. Commonwealth Ct. at 248, 424 A.2d at 987.

In both cases the issue was whether or not the provisions of the Ethics Act unlawfully intruded into the exclusive providence of the judicial branch of our government. We deem it unnecessary to repeat the analysis of the Ethics Act and the reasoning which led us to the conclusion that the Ethics Act was in violation of the exclusive function of the judiciary as provided in Section 10(c) of Article V of the Constitution of Pennsylvania. Suffice it to say, that even though both cases are presently on appeal, they represent the law at the time of the writing of this opinion.

Section 3(e) of the Act provides:

> No former official or public employee shall represent a person, with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

Canon 5 of the Code of Professional Responsibility adopted by the Supreme Court of Pennsylvania specifically addresses conflict of interest. Ethical Considerations 5-1 thru 5-24 and Disciplinary Rules 5-101 thru 5-107 specifically address the professional problem of conflict of interest and provide standards and rules of conduct which all members of the Bar must

follow. Also pertinent is Canon 9 which cautions that lawyers should avoid even the appearance of professional impropriety. Disciplinary Rule 9-101(B) specifically prohibits a lawyer from accepting private employment in a matter in which he had substantial responsibility while a public employee. Thus, the Supreme Court has adopted regulations regarding the conduct of attorneys which address the same concerns as Section 3(e) of the Ethics Act.

Moreover, it is our opinion that any doubt which might exist as to whether the language we have quoted from *Kremer* and *Ballou* controls the result in the instant case, is removed entirely by the decision of our Supreme Court in *Wajert v. State Ethics Commission*, 491 Pa. 255, 420 A.2d 439 (1980). There, the issue was whether the very section of the Ethics Act before us now, Section 3(e), could prevent a retired judge from practicing in a court of law for a period of one year after his retirement from the bench. In very clear language our Supreme Court held that the Ethics Act did infringe upon the Court's *exclusive* power to govern the conduct of an attorney, *including* that of a former judge. The Commission points out that in footnote 5 of that decision, the Court said that it was explicitly refraining from addressing whether the Act is unconstitutional in its application to attorneys who seek to practice in Pennsylvania. That same footnote does indicate, however, the Court's consciousness that the reasons set forth for its ruling "strongly suggest" that the statute *is* unconstitutional as applied to attorneys and that "the possible breadth" of the ruling could very well extend that far, noting that a contrary result might prevent law clerks employed by a court from practicing before that court for one year after their employment terminated. Thus, we think the Supreme Court clearly foresaw the possibility of a case such as the one now before us and, in our opinion,

has indicated what the result must be. We conclude that Section 3(e) of the Ethics Act is an impermissible intrusion by the legislature into an area reserved by the Constitution to the Supreme Court and one where the Supreme Court has acted to regulate the conduct of attorneys. Whether or not the rules adopted by the Supreme Court are adequate to address the problem of conflict of interest and the avoidance of the appearance of impropriety is not before us. Neither is the adequacy of enforcement. What is clear is that the Supreme Court has acted pursuant to its exclusive authority and that action effectively annuls the legislature's attempt to regulate the same conduct as it perains to lawyers.[6]

Having concluded that the Association must prevail with respect to its first argument, we deem it unnecessary to discuss or resolve the question of whether the Act violates the due process provisions of the Constitutions of Pennsylvania and of the United States.

Respondents Thornburgh and Zimmerman have raised an additional argument which does require comment, however. They contend that Section 3(e) of the Act is not a regulation of the practice of law but a term of the contract of employment between the Commonwealth and its employees.[7] Initially, we observe

---

[6] The Supreme Court has declared the meaning of Article V, Section 10(c) in its Rule of Disciplinary Enforcement No. 103.

The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which *shall supersede all other court rules and statutes* pertaining to disciplinary enforcement heretofore promulgated. (Emphasis added.)

[7] The Commission also argues that not all activities which would involve Association members in proceedings before the P.U.C., following their termination of employment with that tribunal, constitute

that Respondents have not shown us that the pertinent statutory provision is a condition of employment. Certainly the Ethics Act itself contains no language to that effect nor has there been any reference to the terms of any individual contract reciting such terms. More importantly, our case law is that a public employer may not achieve a result through an employment contract which could not be achieved directly as a legislative or executive function. *Sweet v. Pennsylvania Labor Relations Board,* 12 Pa. Commonwealth Ct. 358, 316 A.2d 665, *rev'd on other grounds,* 457 Pa. 456, 322 A.2d 362 (1974) and *Beckert v. AFSCME, District Council 88,* Pa. Commonwealth Ct. , 425 A.2d 859 (1981). Since we have already held that Section 3(e) is an impermissible incursion of the legislature into an exclusively judicial function it must follow that the legislature cannot, by labeling Section 3(e) a condition of employment breathe validity into an otherwise invalid legislative effort.

## Conclusion

Being satisfied after reviewing the record in the light most favorable to the Respondents that: 1) the Association's procedure is proper; 2) there is no genuine issue of material fact in dispute; 3) the legal issue presented must be resolved in the Association's favor by virtue of prevailing case law; and 4) the As-

---

the "practice of law." The Commission urges that only those activities which do constitute the "practice of law" are subject to exclusive regulation by the Supreme Court. It is not specific activities but the conduct *of attorneys* that the Supreme Court regulates. Pa. R.D.E. 103. Thus, where an attorney purports to render professional services to a client, whether or not those services relate to activities which in and of themselves may not constitute the practice of law, the attorney's conduct is regulated by the Supreme Court. Where, as here, our sole concern is with regard to the conduct of attorneys, the nature of the services is irrelevant to a determination of whether the Supreme Court has exclusive power to regulate.

sociation is clearly entitled to judgment as a matter of law, we will grant the Association's motion for summary judgment.

### ORDER

AND Now, this 28th day of September, 1981 the motion of the Pennsylvania Public Utility Commission Bar Association for summary judgment is granted.