Harry M. NESS, Appellant,

v.

Elizabeth N. MARSHALL, Individually and in her capacity as Mayor of the City of York, Pennsylvania, and James S. A. Bentzel, William L. Smallwood, Elizabeth L. Brooks, Robert G. Leichliter, James R. Vogelsong, Individually and in their capacity as members of the City Council of York, Pennsylvania.

Edward C. ROBERTS, Appellant,

v.

Elizabeth N. MARSHALL, Individually and in her capacity as Mayor of the City of York, Pennsylvania, and James S. A. Bentzel, William L. Smallwood, Elizabeth L. Brooks, Robert G. Leichliter and James R. Vogelsong, Individually and in their capacity as members of the City Council of York, Pennsylvania.

John W. THOMPSON, Jr., Appellant,

v.

Elizabeth N. MARSHALL, Individually and in her capacity as Mayor of the City of York, Pa. and James S. A. Bentzel, William L. Smallwood, Elizabeth L. Brooks, Robert G. Leichliter, James R. Vogelsong, Individually and in their capacity as members of the City Council of York, Pennsylvania.

Nos. 81–1057 to 81–1059.

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1981.

Decided Sept. 28, 1981.

Lewis H. Markowitz, argued, Marc G. Tarlow, Markowitz & Seidensticker, P. C., York, Pa., for appellant.

Rees Griffiths, argued, Liverant, Senft & Cohen, York, Pa., for appellees.

Before GIBBONS and HUNTER, Circuit Judges, and GERRY,* District Judge.

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Petitioners in these three consolidated appeals alleged that they were dismissed from their positions as solicitors for the City of York, Pennsylvania for reasons of their political affiliation and in violation of their First Amendment rights. The district court judge granted defendants summary judgment on two grounds: (1) that the evidence indicated no genuine issue of material fact concerning plaintiffs' claim that they were dismissed because of their political affiliation, and (2) that even if such issue of material fact could be shown, defendants were as a matter of law entitled to dismiss plaintiffs for those reasons. Because we affirm the district court on the latter ground, we need not definitively dispose of the former.

### I. Facts and Proceedings Below

John W. Thompson, Jr., Edward C. Roberts, and Harry M. Ness served, respectively, as city solicitor for the City of York since January, 1974, as assistant city solicitor for the same period, and as a second assistant city solicitor since January, 1977, until dismissed in January of 1978. They were all appointed to their positions by the former mayor, John D. Kraut, a Republican, and were all dismissed by the newly elected mayor, Elizabeth Marshall, a Democrat. Thompson and Roberts were both members of the Republican Party and Ness, although a registered Democrat, had supported his brother, an unsuccessful Republican candidate for the city council, in the 1977 election.

In complaints filed March 9, 1978, plaintiffs alleged that Mayor Marshall dismissed them solely because of their political affiliations—in violation of their rights under the First Amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983—and requested both compensatory damages and reinstatement to their former positions. Members of the city council were joined as defendants only for the purpose of receiving their necessary consent to the requested reappointment by the mayor.

Construing defendants' motion to dismiss as a motion for summary judgment, the district court granted the parties time to file documentation and affidavits in support of, and in opposition to, that motion. After reviewing the affidavits and depositions submitted by both sides as well as the relevant local and federal law, the court granted defendants' motion. The court decided both that there was no genuine issue of fact from which one might conclude that defendants had been dismissed solely due to their political affiliation, and that, in any event, recent constitutional law indicated that the mayor had the right to dismiss them for just this reason. This appeal followed.

### II. The Reason for Dismissal

Although we affirm the district court's determination on grounds derived from the *Elrod* and *Branti* cases, *see infra* pp. 520–522, some discussion of the court's alternative ground for granting summary judgment is merited.

Reviewing the affidavits and depositions on file, the court found "that Mayor Marshall lacked confidence in the assistants she had inherited from the Kraut administration, that she had a firsthand opportunity to observe them during her tenure as President of the City Council, that she desired to reorganize the City Solicitor's Office to make it, in her mind, more effective and that these were the motivations behind her decision not to continue them in their respective positions." Memorandum, Nov. 14, 1980, Appellants' Appendix, p. 87a. These contentions of the mayor are indeed substantiated in the record. Appendix, pp. 54a–66a (Supplemental Affidavit of Elizabeth N. Marshall), pp. 518a–524a (Deposition of Marshall).

The court also made reference to an account offered by plaintiff Roberts of a phone conversation between Marshall and himself.

It is true that plaintiff Roberts recalls Mayor Marshall as noting in their telephone conversation that Mayor Kraut had fired the prior Solicitors "because they were Democrats" and couldn't under-

stand why Roberts "was taking issue with her decision to do the same thing." The impact of her statement is not clear as she was also making reference to her "right to have her own team as Mayor Kraut had done."

Memorandum, pp. 87a–88a, quoting from Deposition of Roberts, p. 741a.

Not mentioned by the court was that Roberts had allegedly told Marshall in this same conversation that he had learned from "Mrs. Marshall's confidents" [sic] that he was being replaced for reasons of his political affiliation and that Marshall admitted to Roberts that his services as assistant solicitor had been quite acceptable. She also allegedly admitted being advised of the *Elrod* case and that she had the right to fire Roberts "even for political purposes, if I want to, because you are a lawyer...." Memorandum, pp. 739a–743a. (In her deposition Marshall denied substantial familiarity with the *Branti* decision. Appendix, pp. 484a–485a.)

The district court concluded that the reference to Roberts' political affiliation in the phone call was

> overwhelmed by the unchallenged affidavits and testimony which reveal a totally different motivation for Mayor Marshall's action.... This isolated reference under all the circumstances of the record does not support an inference of political discrimination and would be an insufficient base upon which to uphold a verdict for plaintiff. Consequently, I conclude that there exists no genuine issue as to any material fact and that the record demonstrates as a matter of law that plaintiffs were not discharged because of their political belief or affiliations.

Memorandum, p. 88a.

Defendant's motion for summary judgment was granted by the court pursuant to Rule 56(e), Fed.R.Civ.P. Written in response to a series of Third Circuit decisions allowing parties opposing such motions to rely mainly on facts alleged in their pleadings, 56(e) requires that "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *See* Advisory Committee's Note on 1963 Amendment to Rule 56(e); *Adickes v. Kress and Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Robin Construction Co. v. United States*, 345 F.2d 610, 614–15 (3d Cir. 1965).

■ Interpreting the mandate of Rule 56(e), this court has made clear that a party resisting the motion cannot expect to rely merely upon bare assertions, conclusory allegations, or suspicions. *See Tilden Finance Corp. v. Palo Alto Service, Inc.*, 596 F.2d 604, 607 (3d Cir. 1979); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972); *Robin Construction Co.*, 345 F.2d at 614.

■ It is also the case, however, that summary judgment has been characterized as "a drastic remedy," *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir. 1974), and that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties, *United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). Furthermore, even if the preponderance of the evidence should appear to lie on the moving party's side, the court's function is not to decide issues of fact, but only to determine whether any issue of fact exists to be tried. *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.*, 484 F.2d 1037, 1039 (3d Cir. 1973); *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir.), *cert. denied* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). Finally, where intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility. *Associated Hardware Supply Co. v. Big Wheel Distrib. Co.*, 355 F.2d 114, 121 (3d Cir. 1966).

On the record of this case, there is no question that a trier of fact could find that Mayor Marshall's dismissal of the plaintiffs was not motivated by party differences, but that she simply lacked confidence in their abilities to do the required job. It is not quite so obvious to us as it appeared to the district court, however, that the circumstances of the dismissals together with what was alleged as to the phone conversation between Roberts and Mayor Marshall (including the possibility of summoning the alleged confidants of the Mayor) could not support an inference by a trier of fact that the Mayor was motivated by party differences. We need not, though, resolve our doubts about this issue, since we concur in the district court's alternative ground for granting summary judgment for the defendants.

### III. The Appropriateness of Party Affiliation as a Ground for Dismissal

■ The issue of fact just discussed— whether or not plaintiffs were dismissed due to their political affiliation—has legal significance because the Supreme Court has found that many such patronage dismissals are prohibited by the First Amendment. The same decisions enunciating these rights also provide exceptions allowing for certain patronage dismissals—exceptions which both the district court and we find applicable to plaintiffs.

In 1976, the Supreme Court held that the dismissal of certain public employees solely because of their partisan political affiliation infringed their First Amendment rights of belief and association. *Elrod v. Burns*, 427 U.S. 347, 349, 355, 372–73, 96 S.Ct. 2673, 2678, 2681, 2689, 49 L.Ed.2d 547 (1976). The plurality opinion, sharply critical of this aspect of traditional patronage systems, did allow that patronage dismissals of employees in policymaking positions would still be justifiable. 427 U.S. at 367, 372, 96 S.Ct. at 2686–87, 2689. Admitting the difficulty of drawing a clear line between policymaking and nonpolicymaking positions, the plurality suggested that employees who act as advisers, who formulate plans for implementing broad goals, or whose responsibilities are either not well defined or of broad scope are more likely to function as policymakers. 427 U.S. at 367–68, 96 S.Ct. at 2686–87. A concurring opinion, unwilling to condemn patronage systems so broadly, concluded that "nonpolicymaking, nonconfidential" government employees cannot be discharged solely on account of their political belief. 427 U.S. at 374–75, 96 S.Ct. at 2690.

More recently, the Court modified its formulation of the exception to the *Elrod* prohibition of patronage dismissals. Reasoning that those positions for which party affiliation is a very important legitimate consideration and those positions denominated "policymaking" are not necessarily coextensive, the Court concluded that, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). In that case, the Court found that the dismissal by the newly appointed chief Rockland County, New York public defender of two assistant public defenders solely because of their political belief and affiliation was not justified. The assistants' primary responsibility was to represent individual citizens in controversy with the state, and the Court found that any policymaking ought to relate to these clients' needs and not to any partisan political interests. 445 U.S. at 519–20, 100 S.Ct. at 1295–96.

Thus it is left to the courts to decide in any particular case whether "party affiliation is an appropriate requirement for the effective performance of the public office involved." Guidance from the Supreme Court as to when party affiliation may be "appropriate" is limited to the facts of the *Branti* case and to a few examples offered by Justice Stevens in his *Branti* majority opinion. For instance, although the policymaking activities of a football coach do not make political affiliation a relevant factor,

such affiliation would be an appropriate criterion for a nonpolicymaking position such as the assistants to a governor who assist in writing speeches. 445 U.S. at 518, 100 S.Ct. at 1294–95.

In performing the kind of functional analysis called for, we would at least conclude that should a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment. Duties of city solicitors of the City of York are enumerated in the city's Administrative Code. (The city is organized under the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, § 101, 53 P.S. § 41101 *et seq.* and has adopted the "Mayor-Council Plan A" form of government providing for an elected mayor and city council of five members, 53 P.S. § 41401 *et seq.*)

Section 2–35 of the Administrative Code specifies that the city solicitor (and any assistants deemed necessary by the mayor and city solicitor) shall be appointed by the mayor with advice and consent of the council and shall serve at the pleasure of the mayor. The city solicitor is the chief law officer of the city; has control over all city law matters; represents the city in all legal actions brought by or against the city; renders legal opinions to council, the mayor, the department heads, the administrative boards, and the city controller and city treasurer upon questions of law submitted by any of them in their official capacities; and maintains the city lien docket.

The district court found it

difficult to perceive how any solicitor could effectively carry out the duties assigned under the Administrative Code without imparting some advice to City officials that would implicate policy or broad administrative goals.... Plaintiffs were in a position to thwart the goals of the new administration in numerous ways. *See Elrod v. Burns,* 427 U.S. at 367, 96 S.Ct. at 2686–87. The officials in a new administration should be allowed the right to place loyal confi-

dants whom they respect and trust in such delicate advisory positions.

Memorandum, p. 91a. And, as noted by the district court, other courts have recently concluded that attorneys with somewhat similar roles may legitimately be dismissed for political reasons. *See Newcomb v. Brennan,* 558 F.2d 825, 829–30 (7th Cir. 1977); *De Quevedo v. DeJesus Schuck,* 556 F.2d 591, 593 (1st Cir. 1977); *Catterson v. Caso,* 472 F.Supp. 833, 837–38 (E.D.N.Y. 1979).

Plaintiffs portray their role in the former administration as performing a kind of purely technical legal work for any official who might request it. They would allegedly supply the requested work—whether by doing legal research, drafting ordinances and contracts, negotiating settlements, etc. —in a manner neutral with respect to political goals and policies. Appellants' Brief, pp. 33–35.

That a city solicitor in a similar position could *conceivably* operate in such a legal/technical manner is a possibility that need not concern us here. Neither need we decide whether the plaintiffs *in fact* limited themselves to the role they described. In the face of plaintiffs' denials of a policymaking role, defendants might point to certain memoranda written by plaintiffs introduced during depositions that appear to touch upon policy concerns extending beyond narrow legal issues. *See, e. g.,* Thompson Deposition, Exhibit Nos. 5, 8, 9 and 17, pp. 204a, 218a, 219a, 232a; Roberts Deposition, Exhibit Nos. 3, 4, 6, and 7, pp. 760a, 765a, 767a, 769a.

Plaintiffs argue for the opportunity to contest just such factual issues, relying heavily on *Rosenthal v. Rizzo,* 555 F.2d 390 (3d Cir. 1977). Rosenthal, an administrative assistant in the Commercial and Industrial Relocation Department of the Redevelopment Authority of Philadelphia was fired by the Authority's new executive director. Alleging that he had been fired for reasons of his political affiliation, Rosenthal also alleged that he held a nonpolicymaking position—an allegation the truth of which was admitted by two of the four defendants in

their answers. Finding that "[e]vidence as to the nature of Rosenthal's duties, in the form of depositions, was imprecise and cut both ways," this court held that the district court's apparent weighing of the evidence and its resolution of the issue against Rosenthal on a motion for summary judgment was error, and we remanded for a full trial on this issue. 555 F.2d at 392–94.

Discussing the *Elrod* comment concerning the difficulty of drawing a line between policymaking and nonpolicymaking positions, this court stated that,

> the determination of status as a policymaker *vel non* presents a difficult factual question. Where there is evidence to support the employee's claim that he does not make policy, as there is here, he is entitled to a full trial on the issue. Indeed, the state bears the burden of persuasion on that question at trial. Certainly, then, it was improper for the district court to weigh the evidence and rule against Rosenthal on this issue on a Rule 56 motion.

555 F.2d at 394 n.5.

This court was criticizing, in particular, the district court's approach of apparently weighing the evidence to make a factual finding in the context of a summary judgment motion. 555 F.2d at 393 n.3. We did not there state that one's status as a policymaker could never be determined as a matter of law. Where, as a matter of law, a person is determined to have occupied a policymaking position, that person's claims to protection from patronage dismissal under *Elrod* and *Branti* are disposable on a motion for summary judgment.

In this case, we agree with the district court that, as a matter of law, the duties imposed on city solicitors by the York Administrative Code and the undisputed functions entailed by these duties—*e. g.*, rendering legal opinions, drafting ordinances, negotiating contracts—define a position for which party affiliation is an appropriate requirement. In relying on an attorney to perform these functions so intimately related to city policy, the mayor has the right to receive the complete cooperation and loyal-ty of a trusted adviser, and should not be expected to settle for less.

The fact that the solicitors "wear more than one hat" by doing work requested by other city officials, *e. g.*, the council, who might be of a different party affiliation than the mayor, is not enough to contradict this conclusion. The Administrative Code, as previously noted, contemplates that the solicitors "shall serve at the pleasure of the Mayor." Sec. 2–35(a). The Pennsylvania Supreme Court has recognized how important it is that public officials having the power to appoint municipal attorneys feel confident in those attorneys. *See Snyderwine v. Craley*, 434 Pa. 349, 254 A.2d 16, 20 (1969); *Naef v. City of Allentown*, 424 Pa. 597, 227 A.2d 888, 890–91 (1967).

Finally, the allegation that the plaintiffs' role in the former mayor's administration may in fact have been highly constricted does not affect our conclusion. Under the Administrative Code it is contemplated that a mayor might rely upon the city solicitors for the legal advice necessary to implement policy. That one mayor may have chosen not to employ the solicitors in this manner should not stand as a bar to future mayors relying on solicitors to the extent allowed by the Code. To elaborate upon one of Justice Stevens' examples, while it is conceivable that a governor might employ speech writing assistants without regard to their political affiliation, we would not want to prevent governors in general from using political affiliation as a criterion for such positions.

This argument applies with equal force to the case of one such as Ness, whose duties were largely limited by Thompson and former mayor Kraut to the public housing area. Future mayors may well choose to distribute particular assignments among the solicitors in an entirely different fashion, and thus rely on their second assistant solicitor more extensively.

## IV. *Conclusion*

Inasmuch as party affiliation is, as a matter of law, an appropriate (even if not a necessary) requirement for the effective

performance of the city solicitors of the City of York, the district court correctly granted summary judgment for defendants in this case. The judgment of the district court will be affirmed.