## Herrin v. Prudential Property and Casualty Insurance Company

*Irving M. Portnoy,* for plaintiff.

*Eric N. Anderson,* for Prudential Property and Casualty Insurance Company.

*Stephen R. Mlinac,* for Insurance Company of North America.

CAIAZZA, *J.,* October 26, 1982—The facts in this case are these: On February 7, 1980, plaintiff, Joseph B. Herrin was involved in an accident; at the time of the mishap Mr. Herrin was operating his own vehicle without insurance coverage as required by the "Pennsylvania No-fault Motor Vehicle Insurance Act," No-fault Act, 40 Pa.C.S.A. § 1009.101 et seq. At the time of the accident plaintiff resided in Volant, Lawrence County, Pa., in the home of his sister and brother-in-law, Jane and John T. Thayer. Mr. Thayer was the owner of an automobile for which he had obtained a policy of insurance issued by defendant, Prudential Property and Casualty Insurance Company (defendant Prudential), which was in effect on the date of the accident, viz. February 7, 1980.

A pertinent provision of the No-fault Act provides as follows:

Insured means:

(A) an individual identified by name as an in-

sured in a contract of basic loss insurance complying with this act; and

(B) a spouse or other relative of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in residence in the same household with a named insured: 40 Pa.C.S.A. § 1009.103

However, section one of the relevant Prudential policy precludes the extension of no-fault coverage to: "(1)(b) Any relative, who applied for No-fault benefits, resulting from the maintenance or use of his motor vehicle which does not meet the requirements of the Pennsylvania No-fault Motor Vehicle Insurance Act."

Apparently, by letter dated May 22, 1980, plaintiff formally notified defendant Prudential that he was submitting a claim to Prudential for the payment of Pennsylvania no-fault benefits as a resident in the household of Mr. and Mrs. Thayer and as a relative of the Thayers.

Defendant Prudential refused the request of plaintiff and subsequently filed a motion for summary judgment bottomed upon the exclusionary provision in its policy which prevents a relative in residence in the same household as the insured from receiving no-fault benefits resulting from the maintenance or use of his own uninsured vehicle.

A summary judgment will be entered pursuant to Pa.R.C.P. 1035 if the pleadings, depositions, answers to interrogatories, admission and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In ruling on a motion

for summary judgment, the court shall review the record and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party, resolving all doubts as to the existence of a material fact in their favor. It is well established that unless the case is absolutely clear and free from doubt, a summary judgment will not be entered: Davis v. Pennzoil Co., 438 Pa. 194, 264 A. 2d 597 (1970); Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A. 2d 466 (1979). See also Pennsylvania Public Utility Commission Bar Association v. Thornburg, 62 Pa. Commonwealth Ct. 88, 434 A. 2d 1327 (1981).

Quite obviously a tension has been created between that portion of the No-fault Act which (a) defines an "insured" as a *relative* of the named insured who is (1) not identified by name in the insurance contract and (2) who is in residence in the same household as the named insured as against (B) that portion of defendant Prudential's policy which excludes coverage to a relative who owns his own vehicle and fails to comply with the provisions of the No-fault Act.

Notably, section 1009.102(b) of the No-fault Act sets forth the policy of the legislation as being to provide at a reasonable cost "a state-wide system of prompt and adequate basic loss benefits for motor vehicle victims."

The question then becomes—is the plaintiff here a victim or a bystander.

Clearly, even though the vehicle owned by plaintiff was uninsured, the advantages of the act would be afforded to plaintiff pursuant to section 108 of the act, 40 P.S. §1009.108. By reason thereof, the No-fault Act established an assigned claims plan whereby payment of benefits is made by the insurance company to which a claim is assigned by the

plan.[1] One of the situations in which payment must be made in accordance with the provisions of section 108 of the act is where there is a claim of no applicable insurance. Defendant Prudential's position in the case sub judice is premised upon the exclusionary clause contained within the Prudential insurance contract as set forth in length elsewhere herein. In furthering its position, defendant Prudential contends that the policy exclusion carries out the legislative intent manifested in section 104 (40 P.S. §1009.104) of the No-fault Act, which mandates that every owner of a motor vehicle "[S]hall continuously provide security covering such motor vehicle." Defendant opines that the exclusion is necessary in order to prevent a member of a family from purchasing a policy of insurance covering all other members of the family whether or not other "relatives" in the same household own and operate their own uninsured vehicles.

At this juncture, the court should consider: (1) The manner in which an uninsured motorist is treated under the act; (2) The effect of the Statutory Construction Act on the issue presented here.

Turning to the first question, various provisions of the No-fault Act provide penalties for individual owners who do not provide security for their vehicles. Paragraph 601 of the No-fault Act states that an owner who operates or permits the operation of an unsecured vehicle "[U]pon a public highway in the state . . . is guilty of a misdemeanor." See P.S. §1009.601. Paragraph 501 of the act presents a

---

1. In this instance the Insurance Company of North America was assigned as the obligor. Section 103 of the act, 40 P.S. §1009.103 defines obligor as an insurer, self-insurer or obligated government providing no-fault benefits in accordance with this act.

factual situation whereby the drivers license of an uninsured motorist can be either suspended or revoked. See 40 P.S. § 1009.501. Also, paragraph 103 of the act makes the owner of a vehicle ultimately responsible both civilly and criminally for a failure to purchase No-fault insurance. See 40 P.S. § 1009.103. Additionally, paragraph 108 of the act provides for reduced benefits for uninsured motorists. See 40 P.S. § 1009.108. Lastly, paragraph 301 of the act, which abolished traditional tort liability in some instances, excepts "[A]n owner of a motor vehicle involved in an accident . . . if, at the time of the accident, the vehicle was not a secured vehicle." See 40 P.S. § 1009.301(a)(1).

Interestingly enough, no provision in the act states that an uninsured motorist is to be denied the payment of No-fault benefits because of his noncompliance with the No-fault Act. Admittedly, and again considering the maze of the No-fault Act, the legislature may have not even considered some of the issues, including the one here, which have been conjured since the passage of the No-fault Act.

The Statutory Construction Act, 1 Pa.C.S.A. § 1921-1939 provides a means of access, to some degree, through the tunnels of the No-fault Act. 1 Pa.C.S.A. § 1932(a) states that "[P]arts of statutes are in *pari materia* when they relate to the same persons or things or class of persons or things."

Certainly, the legislature has expressed a clear intent to penalize individuals who run aground from the provisions of the act; the penalties recited by this court state precisely the retribution dealt to uninsured motorists. Each chastisement must be considered in pari materia, pursuant to the terms of the Statutory Construction Act, supra. Nowhere in the act does it state that an uninsured motorist is to be penalized by denying to him the right to claim

the benefits which he seeks in this instance. By permitting defendant Prudential to include such an exclusionary provision in its policy is tantamount to sanctioning Prudential to amend an act passed by the legislature of the Commonwealth of Pennsylvania.

Insurance carriers must become sensitized to the resolve of the No-fault Act. In many instances the seminal issues of the No-fault Act presented to the courts have no hard and fast answers; however, they must be reasoned out to logical conclusions. Here, it is obvious that someone must pay, at least initially, certain no-fault benefits to plaintiff. Logically it would appear that the obligor nearest to plaintiff is defendant Prudential; to lay that responsibility at the foot of the assigned risk obligor would be treading past an insurance carrier who has, at the very least, received a premium from its named insured, Mr. & Mrs. Thayer. Contrarily, the Insurance Company of North America has received no consideration whatsoever. Why then should the Insurance Company of North America bear the brunt of payment in this instance? In that regard, the logic of defendant Prudential does not appear to be able to run its course to a consistent conclusion. The Pennsylvania legislature has made it patently clear that an uninsured motorist is not a bystander to the act, but is part of it; even though he has clearly violated its terms, he is afforded the opportunity to apply and receive benefits and, thereafter, he is obligated to pay the penalties provided by the act. The only remaining question is—who is to pay the bill.

Paragraph 204 of the act sets up five sources, in order of priority, for the payment of benefits:

(a) Applicable security.—The security for the

payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs, while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle, or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

Since the definition of an insured applies to plaintiff, defendant Prudential, within the scheme of things promulgated by the priorities established in §204 of the act, must bear the responsibility of making payment to plaintiff since the assigned claims plan is last in order of priority.

This court recognizes that situations will arise where a plaintiff can recover benefits under §204 of the act and then subsequently return all such payments under §501 of the act. That precise question

was addressed in Harleysville Mutual Insurance Company v. Schuck, _____ Pa. Superior Ct. _____, _____ A. 2d. _____ (1982), (No. 726, Pittsburgh, 1980), which stated:

The rationale for requiring an insurer to pay an occupant's claim for basic loss benefits before ultimate liability has been determined seems clear. Compensating an injured victim of a vehicular accident is a paramount purpose of the legislatively adopted no-fault scheme. Thus, an injured victim, even if he or she is an uninsured owner, can receive "prompt and comprehensive professional treatment" and thus be rehabilitated and returned as a productive member of society as quickly as possible. See section 102(a)(9) of the No-fault Act, 40 P.S. §1009.102(a)(9). Only after this purpose has been accomplished does the statute permit a determination of ultimate liability.

## ORDER

Now, October 26, 1982, in conformity with the opinion filed this date in the above-captioned case, the motion for summary judgment filed by the Prudential Property and Casualty Company is hereby denied.

Plaintiff's motion for partial summary judgment is hereby granted; in accordance with the opinion of this court filed herewith defendant Prudential Property and Casualty Insurance Company is the appropriate source of recovery for plaintiff for the benefits provided by the "Pennsylvania No-fault Motor Vehicle Insurance Act," 40 Pa.C.S.A. §1009.101 et seq.

Collaterally, defendant's Insurance Company of

North America is permitted to withdraw its motion for summary judgment.