556 A.2d 515

Township of Spring Garden, Appellant *v.* York Area Transportation Authority and Hallam Borough, Appellees.

Township of Spring Garden *v.* York Area Transportation Authority and Hallam Borough. Hallam Borough, Appellant.

Argued November 3, 1988, before Judges BARRY, COLINS and MCGINLEY, sitting as a panel of three.

*Donald L. Reihart, Laucks & Monroe,* for Township of Spring Garden, appellant.

*Joseph C. Korsak,* with him, *Robert H. Griffith,* for Hallam Borough, appellee.

OPINION BY JUDGE MCGINLEY, March 29, 1989:

The Township of Spring Garden (Spring Garden) appeals an order of the Court of Common Pleas of York County (trial court) denying Spring Garden's motion for summary judgment and holding in favor of the York Area Transportation Authority (Authority), declaring Spring Garden and Hallam Borough (Hallam) members of the Authority and concluding that the Authority lawfully rejected Hallam's and Spring Garden's offers to withdraw from the Authority. Hallam also appeals the trial court's order[1] at No. 968 C.D. 1988 and intervenes in the appeal of Spring Garden at No. 854 C.D. 1988.

---

[1] The trial court's order is docketed at No. 87-SU-02191-08.

The Authority is a municipal authority, which was formed under the Municipal Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §§301-322. The purpose of the Authority is to provide mass transportation for people living in the York County area. The Authority was incorporated with the Department of State on November 1, 1974, by the County of York, Pennsylvania (County). Prior to this incorporation, seven municipalities, including Hallam and Spring Garden, entered into an agreement with the County concerning the formation of the Authority and their participation therein.[2] The Articles of Incorporation were pre-

---

[2] Reproduced Record (RR) at 159a-162a. The second and third preliminary paragraphs of that agreement provide:

WHEREAS York City, Hallam Borough, Manchester Township, North York Borough, Spring Garden Township, Springettsbury Township, and West York Borough have indicated a desire to join in an authority for the purposes of operating a mass transportation system; and

WHEREAS York City, Hallam Borough, Manchester Township, North York Borough, Spring Garden Township, Springettsbury Township, and West York Borough have requested York County to create an authority for the purposes of operating a mass transportation system; and,

. . .

2. York County hereby agrees to form and organize an Authority, said Authority to be organized by authority of the Act of Assembly of May 2, 1945, P.L. 382, as amended and supplemented, and known as the 'Municipalities Authorities Act of 1945' for the purpose of acquiring, holding, constructing, improving, maintaining, operating, owning, leasing, either in the capacity as lessor or lessee, all facilities necessary or incidental thereto for the operation of a mass transportation system including motor buses for public use in the York County area, and further, York City, Manchester Township, North York Borough, Spring Garden Township, Springettsbury Township, and West York Borough hereby agree to join and participate in said Authority to be formed by York County for the purpose of operation of a mass transportation system, including motor buses for us [sic] in the York County area.

RR at 233a-234a.

pared by the County Commissioner's Office. Under Section (e) of the Articles the municipalities were not named as members. Instead, individual representatives of each member township, city, or borough were named. (*See* RR at 107a.)

The by-laws adopted by the Authority (RR at 255a) do not set forth the identity of the members of the Authority at the time they were adopted, but provide in Section 2.02 for the appointment to the Board of the Authority of nine members, which would include at least one member from each of the participating municipalities. Section 8.01 provides for additional municipalities to become members. The original by-laws contain an outright prohibition of withdrawal during the first five years of operation. Section 8.02, unaffected by any amendment, provides:

> *Withdrawal from Authority.* No original participating municipality shall withdraw from the Authority at any time within the first five years of joining the Authority *and except in accordance with the law.* Any municipality withdrawing from the Authority shall give one (1) year notice, said notice to be in writing and given to the Authority and all *participating* municipalities.[3] (RR at 267a (emphasis added).)

Each of the municipalities executed identical resolutions concerning funding of the Authority. Spring Garden adopted its resolution on January 12, 1976. Section 2 of that resolution provides:

> The Township of Spring Garden is hereby committed to the operation of the York Area Trans-

---

[3] We infer that there is a right to withdraw because of the provision for a one year notice of withdrawal. In this regard the by-laws do not track the statute. Had the Authority chosen to track the statute it clearly could have foreclosed any withdrawal.

portation Authority for a period of not less than Five (5) years and, furthermore, hereby agrees to fund its share of the monies to York Area Transportation Authority to defray all expenditures (operation and capital) incurred by the York Area Transportation Authority, including required maintenance of effort, which are not met by the York Area Transportation Authority, through its operating and other revenues, or by Pennsylvania and Federal grants, for a period of five (5) years from the first day of January 1977 thru the 31st day of December 1981. (RR at 264a.)

On November 22, 1977, Hallam adopted a similar resolution. Spring Garden was sent a resolution by the Authority on March 18, 1982, which would have continued the funding for a period of three years. The Spring Garden Board of Commissioners refused to adopt this resolution and on December 31, 1986, Spring Garden adopted a resolution to withdraw from the Authority. On January 6, 1987, notice of that resolution was given to the Authority. Hallam adopted a similar resolution indicating its desire to withdraw from the Authority and notice of that resolution was given to the Authority. On January 8, 1987, the Authority's solicitor notified Spring Garden that it would not process a withdrawal and demanded that the requirements of the Act be met. At a board meeting on April 22, 1987, the Authority voted against allowing Spring Garden and Hallam to withdraw from the Authority.

Spring Garden filed an action seeking declaratory judgment on the rights and obligations of Spring Garden. Hallam was granted intervention in that action. Spring Garden also filed a motion for summary judgment on November 18, 1987. The trial court denied Spring Garden's motion and ruled in favor of the Authority on

March 25, 1988, declaring that Spring Garden and Hallam had duly become members of the Authority and may not withdraw without the official consent of the Authority pursuant to Section 3.1 of the Act, 53 P.S. §304.[4]

Spring Garden makes three arguments: that the Authority was incorporated solely by the County and therefore is not a "joint authority" within Section 3 of the Act, 53 P.S. §303, and Section 3.1 of the Act; and that even if the Authority was a "joint authority," Spring Garden did not satisfy the requirements of Section 3 of the Act to become a statutory member of the Authority; and, lastly because it was not an incorporator of the Authority and has never taken the necessary steps to become a statutory member of that Authority, it is not subject to the withdrawal requirements of Section 3.1 of the Act. Spring Garden asserts they did nothing other than participate with the Authority and that they never became the equivalent of a statutory member.

---

[4] The procedural posture of this case warrants explanation. Spring Garden instituted an action for declaratory judgment on June 16, 1987. On November 18, 1987, Spring Garden filed a motion for summary judgment. Spring Garden then filed a petition for special relief in the form of an expedited hearing. On November 20, 1987, the trial court, by a pre-trial memorandum, acknowledged both parties' desire to resolve the matter quickly and scheduled a December 30 hearing, stating, "[s]ince this matter should be resolved as quickly as possible, we will not concern ourselves with a motion for summary judgment." (*See* Pre-Trial Memorandum of the Trial Court, November 20, 1987, RR at 86a-88a.) After hearing on December 30, 1987, the trial court stated in its opinion of March 25, 1988, that this matter was before the court on an action for declaratory judgment filed by Spring Garden. In its order, the trial court acknowledged Spring Garden's motion for summary judgment, then decided the matter on the merits in favor of the Authority. Because of this order, we assume that Spring Garden's motion for summary judgment was denied. We note also that this order is a final appealable order. (*See* Trial Court's Opinion and Order, March 25, 1988, RR at 185a-194a.)

The Authority argues that Spring Garden and Hallam are original members of the Authority, and after thirteen years of continuous participation they share responsibility for many long term obligations and therefore the Board of the Authority acted within its discretion in denying withdrawal.

A motion for summary judgment is properly granted when the case is clear and free from doubt, where there is no genuine issue of material fact, and where the prevailing party is entitled to judgment as a matter of law. The record should be reviewed by the court in a light most favorable to the non-moving party. *Pennsylvania Public Utilities Commission Bar Association v. Thornburgh*, 62 Pa. Commonwealth Ct. 88, 434 A.2d 1327, *aff'd per curiam*, 498 Pa. 589, 450 A.2d 613 (1982). All reasonable inferences should be resolved in favor of the non-moving party. *Ferguson v. King*, 362 Pa. Superior Ct. 543, 524 A.2d 1372 (1987).

We agree with the trial court that: "The resolution of this dispute between the parties must be resolved by a determination as to whether Spring Garden and Hallam were merely municipalities paying for services rendered by YATA [the Authority] for the eleven (11) year period following its formation or whether they were indeed members of YATA." (Opinion of the Trial Court, March 25, 1988, at 5, RR at 185a-192a.)

Section 3 of the Act sets forth the method of incorporation as follows:

A. Whenever the municipal authorities of any municipality singly or of two or more municipalities jointly shall desire to organize an Authority under this act, they shall adopt a resolution or ordinance signifying their intention to do so but no such resolution or ordinance shall be adopted until after a public hearing has been held, the

notice of which shall be given at least thirty days before in the same manner as hereinafter provided for the giving of notice of the adoption of the resolution or ordinance.

Thereafter if the resolution or ordinance is adopted the municipal authorities of such municipality or municipalities shall cause a notice of such resolution or ordinance to be published at least one time in the legal periodical of the county or counties in which such Authority is to be organized, and at least one time in a newspaper published and of general circulation in such county or counties. Said notice shall contain a brief statement of the substance of such articles making reference to this act, and shall specifically provide that the municipality or municipalities have retained the right which exists under this act to approve any plan of the Authority, in the case of Authorities created for the purpose of making business improvements or providing administrative services if appropriate, and shall state that on a day certain, not less than three days after publication of said notice, articles of incorporation of the proposed Authority will be filed with the Secretary of the Commonwealth of Pennsylvania. No such municipality shall be required (any law to the contrary notwithstanding) to make any other publication of such resolution or ordinances under the provisions of existing law. The aforesaid publication of such notice shall be sufficient compliance with such laws.

B. On or before the day specified in said notice the municipal authorities shall file with the Secretary of the Commonwealth articles of incorporation together with proof of publication of the notice as aforesaid. Said articles shall set forth:

(a) The name of the 'Authority.'

(b) A statement that such Authority is formed under this act.

(c) A statement whether any other Authority has been organized under this act or under the act … and is in existence in or for the incorporating municipality or municipalities, except that where any one or more of the municipalities have already joined with other municipalities not composing the same group in organizing a joint Authority, the application shall set forth the name of the Authority theretofore created, together with the names of the municipalities joining therein.

(d) The name of the incorporating municipality or municipalities together with the names and addresses of its municipal authorities, and

(e) The names, addresses and term of office of the first members of the board of said Authority.

Section 3 (A) of the Act (footnotes omitted).

Section 3.1 of the Act, entitled "Municipalities withdrawn from and joining in joint authorities," states in pertinent part:

A. Whenever an Authority has been incorporated by two or more municipalities, any one or more of such municipalities may withdraw therefrom, but no municipality shall be permitted to withdraw from any Authority after any obligation has been incurred by the Authority. Whenever an Authority has been incorporated by one or more municipalities, any municipality not having joined in the original incorporation may subsequently join in the Authority.

Any municipality wishing to withdraw from or to become a member of an existing Authority shall signify its desire by resolution or ordinance. If the

Authority shall by resolution express its consent to such withdrawal, or joining the municipal authorities of the withdrawing or joining municipality shall cause a notice of its resolution or ordinance to be published at least one time in the legal periodical of the county or counties in which the Authority is organized and at least one time in a newspaper published and of general circulation in such county or counties ...

B. On or before the day specified in the notice the municipal authorities shall file such application with the Secretary of the Commonwealth, together with proof of publication of the notice hereby required. In the case of a municipality seeking to become a member of the Authority, the application shall set forth all of the information required in the case of original incorporation in so far as it applies to the incoming municipality, including the name and address and term of office of the first member or members of the board of the Authority from the incoming municipality, and if there is to be a reapportionment of representation or revision of the terms of office of the members of the board, the names, addresses and terms of office of all the members of the board as so reapportioned or revised. The application in all cases shall be executed by the proper officers of the withdrawing or incoming municipality under its municipal seal, and shall be joined in by the proper officers of the governing body of the Authority, and in the case of a municipality seeking to become a member of the Authority also by the proper officers of each of the municipalities that are then members of the Authority, pursuant to resolutions by the municipal authorities of such municipalities.

Section 3.1 of the Act.

Review of the Articles of Incorporation filed by the Authority in 1974 indicates that the County was the sole incorporator of the Authority.[5] Section 3 of the Act requires the names, addresses, and terms of office of the first members of the board of the Authority to be set forth. The County, in section (e) of the Articles, complied and provided said names and addresses.[6] We note that the Articles in section (e) erroneously state that the listed

---

[5] Section 3 of the Act requires that the name of the incorporating municipality or municipalities with the names and addresses of its municipal authorities be set forth in section (d) of the Articles. The Authority's Articles state:

> (d) The name of the incorporating municipality is the County of York, Pennsylvania, whose Board of County Commissioners consists of the following:
>
> Charles A. Stein, Jr., (Pres.) 2815 Cambridge Road; York, Pennsylvania 17402
>
> W.C. McKinley, RD#2 Red Lion, Pennsylvania 17356
>
> Carroll H. Leppo, 251 Lynbrook Drive; York, Pennsylvania 17402 (RR at 107a.)

[6] (e) The names, addresses, and terms of office of the first members of the York Area Transportation Authority are as follows:

Joseph Kopecki: 467 Fitzpatrick Lane; Hallam, Pennsylvania—term expiring 6/1/75

Jack H. Neal: RD#5, York, Pennsylvania—term expiring 6/1/76

Melvin S. Rife: 907 North George Street; York, Pennsylvania—term expiring 6/1/77

Robert H. Hubley: 628 Madison Avenue; York, Pennsylvania—term expiring 6/1/77

Robert E. Varner: 120 Scarboro Drive; York, Pennsylvania—term expiring 6/1/78

Saylor L. Creawell: 20 S. Findlay Street; York, Pennsylvania—term expiring 6/1/79

Gerald E. Ziegler: 1411 Monroe Street; York, Pennsylvania—term expiring 6/1/75

Lynwood M. Knaub: 502 Madison Avenue; York, Pennsylvania—term expiring 6/1/78

Benjamin Lepore: RD#6, York, Pennsylvania—term expiring 6/1/76 (RR at 107a.)

names and addresses are those of the *first members of the Authority*, and not the first members of the *board of the Authority* as required under Section 3 of the Act. The Authority argues that "[t]he only flaw in the paperwork was the failure to name the municipalities as members under section (e). Rather, the individual representatives of each member township, city or borough was [sic] named." (Authority's Brief at 7.) This argument is unconvincing for two reasons: one, the County complied with Section 3 of the Act in its Articles in every other respect, and so it is reasonable to conclude the County knew that the names and addresses of the members of the *board* of the Authority were required under section (e), but omitted the word "board" before the word "members;" and two, Section 3 of the Act requires the names of the incorporating municipality or municipalities to be set forth in section (d) of the Articles, but the County failed to list the other municipalities, and named only itself as the incorporating municipality. The Authority acknowledges that no municipality was specifically named or referred to in conjunction with the names of the individual board members.

The Authority also argues that Spring Garden and Hallam intended to join the Authority. In support of its position the Authority relies upon a document executed by Spring Garden, Hallam and the other municipalities along with the Authority, entitled, "Agreement and Terms and Conditions by and Between York County and Participating Municipalities." (RR at 233a.) The Authority argues that Spring Garden and others[7] asked the County to create an authority. (RR at 233a.) It also argues that Spring Garden and the others agreed to "join and

---

[7] The "others" include: York City, Hallam Borough, Manchester Township, North York Borough, Springettsbury Township and West York Borough.

participate in the Authority." (RR at 234a.) It is clear from the agreement that Spring Garden and Hallam voiced their interest in the services to be provided by the proposed Authority. The County may have incorporated the Authority in response to the strong interest expressed by the various municipalities. However, without the fulfillment of the requirements of Section 3 of the Act there is no clear evidence to indicate the municipalities wished to be bound indefinitely under Section 3.1 of the Act. On the contrary, Spring Garden and Hallam adopted resolutions (RR at 237a and 68a, respectively) subsequent to the incorporation of the Authority which expressly state an intention to be legally bound for only a period of five years. In these resolutions Hallam and Spring Garden stated that: "This Resolution shall supplement and be in addition to the Agreement and Terms and Conditions by and between York County and Participating Municipalities, and where inconsistent [sic] with said Agreement this Resolution shall control and shall be binding." (RR at 239a and 70a.)

Additionally, the record includes a March 18, 1982, letter from the Authority to Spring Garden sent after the expiration of the initial five year resolution, requesting an extension "commitment" for another period of three years. This letter stated in part:

The enclosed resolution[8] is designed to continue the agreement between Spring garden Township and the York Area Transportation Authority that has been in effect the past five years.

The Authority believes such an agreement is necessary so that planning and operations can be more than just a day-to-day situation. ...

---

[8] The enclosed resolution was not adopted by Spring Garden.

Upon adoption and signing of the resolution, please send a copy to this office. (RR at 241a (footnote added).)

If Spring Garden was a statutory member of the Authority there would have been no need for the Authority to request a contractural commitment for an additional term of years because there is no statutory authorization for the withdrawal of a statutory member without consent under Section 3.1 of the Act.

Finally, in support of its first argument, Spring Garden asserts that it agreed with the Authority to follow the terms of the by-laws as the basis of their agreement. (RR 238a and 70a.) The by-laws further support the contention that Spring Garden and Hallam were not "members" of the Authority. First, the by-laws do not list Spring Garden and Hallam as the members of the Authority. Second, the only purpose of Section 8.02 of the by-laws reflects an intention by the parties to treat Spring Garden and Hallam differently than statutory members subject to Section 3.0 of the Act. The five year limitation reflects an intention to treat Spring Garden and Hallam not as statutory members, but as participating members. Such a time limitation is unnecessary since statutory members may never withdraw without the Authority's consent.

Spring Garden's second argument is that it did not become a member of the Authority *after* its incorporation by the County. As stated, membership after incorporation of an Authority is controlled by Section 3.1 of the Act. The Authority offered no evidence of publication of notice of the resolutions pursuant to Section 3.1. The only resolutions submitted by Spring Garden and Hallam after incorporation contained a limited five (5) year commitment. After scrutinizing the resolutions we conclude that they cannot be construed as expressing a desire to become permanent members of the Authority. Thus,

Spring Garden and Hallam were not incorporating members of the Authority according to Section 3 of the Act, nor were they "joining" members under Section 3.1 of the Act.

Spring Garden's third argument is that it is not subject to the withdrawal requirements of Section 3.1 of the Act. First, it argues that Section 3.1 of the Act provides in plain language that it is applicable only where "an authority has been incorporated by two or more municipalities." The Authority was incorporated solely by the County, and therefore is not a "joint authority" under Section 3.1 of the Act. Section 3 of the Statutory Construction Act of 1972, Act of December 6, 1972, P.L. 1339, *as amended*, 1 Pa. C. S. §1903(a), states:

> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage, but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa. C. S. §1903(a).

Additionally, Section 3 of the Act, 1 Pa. C. S. §1922 provides in pertinent part:

> In ascertaining the intention of the General Assembly in the enactment of a statute following presumptions, among others, may be used:
>
> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
>
> (2) That the General Assembly intends the entire statute to be effective and certain.

1 Pa. C. S. §1922.

The Authority was not incorporated by two or more municipalities. The withdrawal requirements of Section

3.1 of the Act are inapplicable to Spring Garden and Hallam.

Alternatively, Spring Garden argues that it has complied with the requirements set forth in the Authority's by-laws and therefore should be deemed withdrawn as of December 31, 1987, one year after Spring Garden's Resolution No. 86-20,[9] was sent to the Authority.[10] The Authority recognizes that withdrawal under Section 3.1 of the Act is discretionary with the Authority. However, pursuant to Section 3.1 it is not discretionary, the Authority argues, where obligations have been incurred by the Authority. A review of the Act does reveal that withdrawal from an authority incorporated by two or more municipalities is discretionary under Section 3.1 of the Act. However, Spring Garden and Hallam are not incorporating members of the Authority under the Act and therefore are not subject to the Act's requirements. Review of the record indicates that many of the documents refer to Spring Garden and Hallam and the other aforementioned municipalities as "participating members" of the Authority.[11] We agree. However, we must conclude

---

[9] RESOLUTION #86-20 PROVIDING FOR A NOTICE TO THE YORK AREA TRANSPORTATION AUTHORITY AND ALL PARTICIPATING MEMBERS OF THE DECISION TO WITHDRAW AS A PARTICIPATING MEMBER. (RR at 35a.)

[10] Section 8.02 of the by-laws requires a participating municipality to give the Authority one year notice of its intent to withdraw. It is uncontested that Spring Garden and Hallam have complied with this requirement by mailing written notice of Resolution No. 86-20, on December 31, 1986, by certified mail, return receipt requested. (*See* RR 35a and Notes of Hearing, December 30, 1987, (Hearing) at 16.)

[11] Spring Garden concedes that it has "participated" in the Authority, but emphasizes that it never statutorily joined the Authority. (Notes of Testimony, December 30, 1987, (N.T.) at 7.) This is demonstrated by the parties' use of the words "participated," "participants," "participation," and "participate" throughout the hearing and contained in the many documents cited to by the parties.

that "participating members" are not statutory members, and withdrawal of "participating members" is not discretionary with the Authority. Spring Garden and Hallam have complied with the withdrawal requirements of the by-laws of the Authority. They should be permitted to withdraw from the Authority.

Accordingly, we reverse the order of the trial court and remand[12] for further determinations in accordance with this opinion.

## ORDER

AND NOW, this 29th day of March, 1989, the order of the Court of Common Pleas of York County dated March 25, 1988, at No. 87-SU-02191-8, is hereby reversed and remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

[12] Due to Spring Garden's prayer for relief (*See* Spring Garden's Complaint, No. 21, RR at 12a) and the trial court's determination that Spring Garden and Hallam were members under the Act, the trial court did not address the issues raised in Spring Garden's Complaint, namely, whether service charges be based upon ridership (established to be 1.7 percent) or based upon the route miles covered in the township (11.1 percent), and the distribution of costs of a new building to house the Authority's buses. (*See* Spring Garden's Complaint, Nos. 9-12, RR at 8a-9a.) Because we have concluded that Spring Garden and Hallam have withdrawn from the Authority as of December 31, 1987, in the interest of judicial economy, we remand to the trial court for determination of Spring Garden's and Hallam's responsibilities and long term obligations.