

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2002

# Tomalis v. Atty Gen PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3347

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Tomalis v. Atty Gen PA" (2002). *2002 Decisions.* Paper 318.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/318

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-3347


MATTHEW W. TOMALIS,

Appellant

v.

OFFICE OF ATTORNEY GENERAL OF THE
COMMONWEALTH OF PENNSYLVANIA;
D. MICHAEL FISHER, individually and in
his official capacity as ATTORNEY GENERAL OF THE
COMMONWEALTH OF PENNSYLVANIA


On Appeal from the Untied States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 99-cv-00099)
District Judge: Hon. William L. Standish


Argued May 10, 2002

Before: ALITO, COWEN and LOURIE*, Circuit Judges

(Filed June 3, 2002)

*Honorable Alan D. Lourie, U.S. Circuit Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation. James B. Lieber, Esq. (Argued)
Lieber & Hammer
5528 Walnut Street
Pittsburgh, PA 15232

Counsel for Appellant

John G. Knorr, III, Esq. (Argued)
Office of Attorney General of Pennsylvania
Department of Justice
Strawberry Square
15th Floor
Harrisburg, PA 17120

Counsel for Appellees

OPINION


COWEN, Circuit Judge

We are presented with the question of whether a Senior Deputy Attorney General's rights to free speech and association were violated when he was terminated from his position as a tax litigator for the Commonwealth of Pennsylvania. We agree with the District Court that no constitutional violation occurred, and will affirm the grant of summary judgment dismissing the complaint.

I.

Plaintiff Matthew W. Tomalis, was employed by the Office of Attorney General ("OAG") for the Commonwealth of Pennsylvania as a Deputy Attorney General ("DAG") from approximately August 1987 until February 1997. He was initially hired by Republican Attorney General Roy Zimmerman, but during his employment Tomalis was not affiliated with either the Democratic or Republican party. Tomalis was a political Independent. He was never told that political affiliation was a requirement for his position. Defendant Michael Fisher, the current Attorney General of Pennsylvania, came into office in 1996, following the criminal investigation and resignation of Attorney General Ernie J. Preate, Jr.

After winning the election, Fisher, through his First DAG Gerald J. Pappert, sent a letter to all at-will employees in the OAG, including Tomalis, requesting that they submit their resignations within one week. Instead of submitting a letter of resignation, Tomalis wrote a letter in response that said, amongst other things, that the wholesale request for resignations was devastating to office morale. He copied that letter to the media, and portions of the letter were published in various newspapers.

After Fisher came into office, Tomalis was asked to prepare a list of all cases he was handling for the Commonwealth. In the course of preparing the list, Tomalis learned that the parties in some of the cases had contributed money to Fisher's 1997 Inaugural Committee. Concerned that this presented a conflict of interest, Tomalis informed Chief DAG Carol Weitzel of the situation. He further raised the issue at a staff meeting to Executive DAG Louis Rovelli. Not long after the staff meeting, on February 13, 1997, Tomalis' employment with the OAG was terminated.

At the time of the termination, Tomalis was classified as a "DAG IV." This is the highest classification possible in the OAG for a staff attorney. A DAG IV is also known as a "Senior DAG." From the beginning of his employment with the OAG in the late 1980s, Tomalis received complex cases to work on. One such case was considered by him to be the biggest or amongst the biggest tax cases in recent years.

The official written job description for a DAG IV is quite comprehensive and delineates substantial potential roles for a DAG IV. The job description begins by stating that a DAG IV is a "highly responsible" position within the OAG. It further states that a DAG IV "renders legal services and advice on matters of significant scope, importance, and complexity, and is generally considered to have expertise in a particular field of law." It adds that a DAG IV may serve as a "Senior Deputy Attorney General-in-Charge of a regional office of moderate size" and that a DAG IV's work involves "conducting litigation of the utmost importance and complexity." It closes by stating that a DAG IV "works independently except in extraordinary cases" and that work is "reviewed via conferences with the Section Chief." The record reveals that DAGs have sat for the Attorney General on Pennsylvania's Board of Finance and Revenue and they have advised on how the Attorney General's vote on that Board should be cast.

In connection with his promotion to DAG IV from DAG III, Tomalis authored a statement describing his actual responsibilities as a DAG III. He stated that as a DAG III, he was "handling . . . all aspects of appeals of state tax matters," that some of the cases involved millions of dollars, and that the "impact of the tax litigation [cases he handled] can range from almost none . . . to an impact on thousands of other tax payers." Tomalis further explained that most of his cases settled. The terms of the settlement, according to Tomalis, were "generally within [his] discretion." At oral argument, Tomails' counsel affirmatively represented to this panel that Tomalis had settlement authority up to $25,000.

Tomalis was responsible for typical day-to-day litigation matters, such as writing briefs, negotiating settlements, conducting discovery, and appearing in court for oral argument. In his deposition, Tomalis explained that briefs to the Pennsylvania Supreme Court had to be reviewed by superiors, but that briefs filed in the lower state appellate court (i.e., the Pennsylvania Commonwealth Court), correspondence, and discovery-related documents were not submitted for such review before being filed. At times,

threshold decisions to litigate or settle a case rested with Tomalis. At deposition, Tomalis further indicated that he could recall only a few instances in which he received specific direction on the handling of a tax case. The record further demonstrates that Tomalis was called on to review and offer commentary on proposed legislation and regulations, and to give legal advice on tax questions to other divisions of the OAG.

At any given time, Tomalis could have been handling several hundreds of cases for the Commonwealth of Pennsylvania. The record reveals that Tomalis received significant praise for some of his professional efforts. For example, the record contains a letter dated February 26, 1996 from Michael J. Semes, who was apparently Chief Counsel at the Pennsylvania Department of Revenue. Attorney Semes lauded Tomalis for his litigation skills in handling cases for the Department of Revenue. The letter indicates that Tomalis "worked closely with the Department in developing a strategy to minimize the potential damage [of a particular court decision that had a] questionable rationale." Semes further states in his letter that this particular appellate court decision has "significant fiscal and policy impact."

The official job description did not perfectly match Tomalis' actual responsibilities in the OAG during his tenure. Tomalis never supervised other employees, performed investigative work, or assigned cases. He did not have any dealings with contracts or leases and did not conduct performance evaluation of others. Tomalis only met Fisher once, at a meeting involving all DAGs that took place after Fisher's transition into office.

## II.

Plaintiff filed the instant "constitutional tort" action against the OAG and Fisher under the Civil Rights Act of 1871 (42 U.S.C. 1983) alleging that his termination from the OAG constituted a violation of his First Amendment rights. Plaintiff claimed that he was improperly terminated because of his political affiliation and/or because he spoke out about matters of public concern. He also alleged violations of Pennsylvania state law. The OAG moved for dismissal, claiming immunity from suit under the Eleventh Amendment to the United States Constitution. The District Court granted the OAG's motion to dismiss. Fisher also moved for summary judgment, which the District Court denied as premature but allowed leave to renew the motion after further discovery. More discovery took place, Fisher's motion was renewed, and the District Court granted judgment in favor of Fisher on the federal claims. The District Court declined to exercise supplemental jurisdiction over the Pennsylvania state law claims. Plaintiff appeals the grant of the OAG's motion to dismiss and the grant of summary judgment in favor of Fisher on the First Amendment claims.

## III.

The District Court had jurisdiction over this case under 28 U.S.C. 1331 and 1343. We have jurisdiction pursuant to our power to review final judgments under 28 U.S.C. 1291. We review the grant of a motion for summary judgment in favor of defendant de novo, and exercise the same analysis as the District Court under Federal Rule of Civil Procedure 56(c). See, e.g., Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (1998); Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (1998). Tomalis raises two separate reasons why his termination from the OAG amounted to a First Amendment violation actionable under the Civil Rights Act of 1871. He also argues that the OAG was improperly dismissed because it is liable for fees. We address each of his grounds in turn.

A. Termination based on Political Affiliation: The Elrod-Branti Claim

Tomalis first asserts that the District Court erred by concluding that he fell within the "Elrod-Branti" exception, which allows government employers to discharge employees based on political association if it can be demonstrated that party affiliation is an appropriate requirement for effective performance of the specific job in question. We are not persuaded. In this Circuit, Elrod-Branti claims are decided on a case-by-case basis. See Boyle, 139 F.3d at 396. After reviewing the duties that Tomalis actually performed, and the duties he could be called on to perform as a Senior Attorney in the OAG, there is no doubt that the District Court disposed of this issue correctly. The DAG IV description is quite broad and includes the potential for rendering legal services, giving advice, and otherwise engaging in roles that would have a substantial impact on politically sensitive issues. In our view, it is clearly a position that is "intimately relat to policy. Wetzel, 139 F.3d at 385.

Tomalis' attempt to minimize the scope and importance of his role within the OAG as simply that of "technician" or "line attorney" is wholly unpersuasive. Tomalis did not act as a document clerk or paralegal, exercising no meaningful independent legal judgment that impacts the OAG's position on tax matters. Rather, he was an attorney deeply enmeshed in the ebb and flow of important tax litigation for the Commonwealth, handling cases that have significant ramifications on policy and affect taxpayers beyond the particular litigants. By way of example, the Semes letter reveals that Tomalis was involved in "strategy" determinations with regard to limiting the potentially large adverse policy and fiscal impact of a particular Commonwealth Court decision.

Additionally, Tomalis agreed with that part of the official DAG IV description which stated that he rendered advice and legal services on matters of significant scope, importance and complexity. He also admitted to reviewing proposed regulations and providing commentary in his capacity as a tax attorney. Certainly, this is not the work of a mere "technician" or "line attorney," whatever those phrases are intended to connote. Rather it is the work of a highly skilled, experienced, and specialized litigator whose personal, independent efforts and choices have real consequences for the OAG and the Commonwealth in the realm of tax law. The Commonwealth Court, where Tomalis argued cases and submitted briefs without review by superiors, is an appellate-level tribunal in Pennsylvania. Its official decisions may have substantial policy-related repercussions that echo throughout the state for many years unless overturned by the Pennsylvania Supreme Court.

The facts that Tomalis: (1) was supervised to some degree in some (but not all) aspects of his job and (2) was subject to more formal performance review do not alter the outcome. If that rationale were stretched further, it might eviscerate the Elrod-Branti doctrine altogether, since almost all government employees answer to a superior of some variety and do not have the absolute, "final word" on a particular issue. See generally Americanos v. Carter, 74 F.3d 138, 142 (7th Cir. 1996), cert. denied, 517 U.S. 1222 (1996). In short, we conclude that political affiliation "is an appropriate requirement for the effective performance of the public office involved" in this case. Branti, 445 U.S. at 518. Accordingly, no First Amendment violation occurred.

B. Free Speech Retaliation: The Pickering/Connick claim

Apart from any Elrod-Branti concerns, Tomalis argues that he was illegally terminated for speaking out on matters of public concern. More specifically, he asserts that his First Amendment rights were violated when Fisher terminated him for: (1) his letter on office morale and/or (2) his comments about campaign financing and the potential for conflicts of interest within the OAG.

Section 1983 free speech retaliation claims are addressed under a well-known tripartite analytical framework. First, the employee's speech must be "protected" by the First Amendment. To be protected, it must address a matter of public concern and not be outweighed by the interest of the employer in "promoting the efficiency of the public service it performs through its employees." Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995). Whether the employee's speech rights are outweighed by the injury it could cause the employer presents a question of law for the Court. Baldasarre v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2000). Second, the employee's words must be a substantial motivating factor behind the termination. Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996). Third, the employer can avoid civil liability by demonstrating that the termination would have occurred even without the employee's speech, thereby destroying the requisite element of causation Id.

The District Court disposed of the matter on the first prong of the inquiry. It concluded that while Tomalis' comments did embrace matters of public concern, his free speech rights were outweighed by Fisher's interests in maintaining an efficient office. After reviewing the record, we are constrained to agree. Tomalis' comments were not offhanded remarks directed at a few co-workers of equal or lower rank. Rather, one was directed to his superiors in the OAG and the other was copied to various newspapers, where portions of it were quoted. His words were extremely critical of Fisher and alleged that Fisher acted improperly. His letter regarding the wide scale request for resignations accused Fisher of baselessly and "publically impugning" the OAG employees, suggesting that they were involved with, and perhaps responsible for, the criminal conduct of former Attorney General Preate. The letter also accused Fisher of "political maneuver[ing]." While Tomalis' right to speak out on the issues he chose to

address is indeed significant, on balance, we believe it is superseded in this case by Fisher's interest in promoting the "efficiency of the public service" he and the OAG performs.  Tomalis' comments could undercut the morale of the OAG, cause disruption, and hinder its operations.

Our conclusion on this issue is further informed by Tomalis' specific position within the OAG.  While we decline to collapse the free speech claim and the Elrod-Branti claim into one constitutional tort, Tomalis' duties as a "Senior DAG" are relevant to his Pickering/Connick cause of action.  Fisher has a reasonably greater cause for concern when direct public criticism of him comes from one in a confidential position.  Fisher cannot implement his goals and policies alone.  Rather, he does so only through the individual attorneys that represent him in matters on a day-to-day basis.  For example, as explained above, Tomalis' position thrusts him into an appellate court to speak on Fisher's behalf in major pieces of tax litigation that can have long-lasting, state-wide effects on policy and other tax payers.  As such, Fisher has a vested interest in his loyalty, confidence and judgment.  See Rankin v. McPherson, 483 U.S. 378, 388 (1987) (explaining that employer's interest includes whether the speech affects "close working relationships for which personal loyalty and confidence are necessary.").  The employer does not have "to allow events to unfold to the extent that the disruption of the office and the destruction of the working relationships is manifest before taking action."  Connick, 461 U.S. at 152.

C.  The Dismissal of the OAG and its Liability for Fees

Plaintiff argues that because the present suit includes a claim against Fisher in his official capacity for reinstatement, the OAG may be held responsible for attorneys fees under 42 U.S.C.  1988.  We disagree.  Since there is no liability on the merits against the OAG or against Fisher in his official capacity, there is no responsibility for fees.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).

For all of the foregoing reasons, the judgment of the District Court entered on August 8, 2001, will be affirmed.


TO THE CLERK:

Please file the foregoing opinion.


/s/ Robert E. Cowen
United States Circuit Judg