IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
December 22, 2022 12:12 PM
SX-2008-CV-00515
**TAMARA CHARLES**
**CLERK OF THE COURT**



IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

THEODORE CYPRIAN, as Personal )
Representative of CRESCENTUS OSCAR, )
Deceased, )
                     Plaintiff, )
      v. )
VIRGIN ISLANDS WATER AND POWER )
AUTHORITY, )
               Defendant. )

**CASE NO.: SX-2008-CV-00515**

ACTION FOR WRONGFUL DEATH,
INJURY AND DAMAGES

**2022 VI SUPER 99**

## MEMORANDUM OPINION and ORDER

¶ 1     Before the Court is Defendant Virgin Islands Water and Power Authority's ("WAPA") Motion for Judgment on the Pleadings ("Motion"), filed June 13, 2011; Plaintiff's Opposition, filed December 23, 2011; WAPA's Reply, filed January 11, 2012; WAPA's Supplemental Brief in Support, filed August 12, 2014; Plaintiff's Supplemental Brief in Opposition, filed August 19, 2014; WAPA's Reply re Supplemental Brief, filed September 29, 2014. By Order of September 10, 2021, Plaintiff's Rule 12(c) Motion is treated as a Rule 56 motion for summary judgment, pursuant to V.I. R. Civ. P. 12(d), and the parties were provided leave to supplement their filings on the Motion. Thereafter, the parties filed: WAPA's Motion for Summary Judgment accompanied by Statement of Undisputed Facts ("SOF") and Memorandum of Law in Support ("Memo in Support"), filed October 2, 2021[1]; and Plaintiff's Memorandum in Opposition ("Opp. Memo") and Response to Defendant's Statement of Undisputed Facts ("SOF Response") and Additional Disputed Material Facts ("Disputed SOF"), filed October 27, 2021. The parties' arguments having been considered, for the reasons set forth below, Defendant's Motion will be denied.

## BACKGROUND

¶ 2     On or about February 13, 2007, at approximately 5:37 a.m., Crescentus Oscar operated a 2000 Isuzu Rodeo, eastbound along Queen Mary Highway in St. Croix. Plaintiff's Second

---

[1] WAPA's Motion for Summary Judgment is not considered as a second separate motion, but rather as a supplement to its original Rule 12(c) Motion, converted to treatment pursuant to Rule 56.

Amended Complaint ("Pl.'s Am. Compl.") ¶ 9. At the same time and place, Gunnel Butcher[2] operated a 2003 Jeep Liberty traveling westbound along Queen Mary Highway. *Id.* ¶ 10. Oscar attempted to make a right turn, across the westbound lane of traffic, toward the entrance to the Public Works Department ("DPW") parking lot. *Id.* ¶ 12. As Oscar attempted to turn, the left side of his vehicle was struck by the vehicle driven by Butcher. *Id.* The collision caused injuries to Oscar which resulted in his death on the same day. *Id* ¶ 28. Butcher testified that he first saw Oscar's car travelling in the opposite direction about 60 feet away, with no turn signal on, and that Oscar turned in front of Butcher when Oscar was too close for him to stop, about one car length away. He did not recall seeing a streetlight on. Disputed SOF ¶ 84, Exh. 4, Deposition of Gunnel Butcher ("Butcher Dep.") at 23-24. At the time of the collision both Oscar's headlights and Butcher's headlights were on. SOF; SOF Response, ¶ 7.

¶ 3        Following the accident, Butcher advised the investigating officer that when he noticed the other vehicle turning in front of him, he attempted to apply his brakes, but could not avoid the collision. *Id.* Exh. 5, Deposition of Felipe Concepcion ("Concepcion Dep.") at 76, 82. At the time of the accident, it was dark, and the only available illumination, apart from vehicle headlights, was from the streetlights in the area. Pl.'s Am. Compl. ¶ 14. According to Oscar's coworker who observed the incident from the DPW parking lot, the collision occurred before sunrise when "it was very, very dark." There was a WAPA streetlight "right above the gate" to the parking lot "that for about three months been – it's been ambering [sic][3]... it come on - it will stay on for like, say, 10 minutes, 10, 15 minutes, I'd say, and then it comes off, and it - by the time it comes on, it's like another 15 minutes after that. But when that light goes off, the whole parking lot like where I park was basically darkness." Oscar's coworker "saw him coming in, I sat there, and when he make that right turn, at that time, that's when the light was already off." Disputed SOF, Exh. 3, Deposition of Russell Allen ("Allen Dep.") at 11, 39. The same streetlight "was doing the same thing... doing the ambering [sic], just coming off every few minutes" about two years earlier and

---

[2] Gunnel H. Butcher was a named Defendant in Plaintiff's original Complaint and Second Amended Complaint, deemed filed December 16, 2022 by Order of that date. Pursuant to stipulation of those parties, Plaintiff's action against Butcher was dismissed with prejudice by Order entered June 26, 2012, and the case proceeds on Plaintiff's claims against WAPA alone.

[3] "The technical term is oscillating." Disputed SOF, Exh. 2, 30(b)(6) Deposition of WAPA through Clinton Thomas Hedrington, Jr. ("WAPA 30(b)(6) Hedrington Dep.")

WAPA came to work on the light. Allen Dep. at 43-44. Officer Concepcion acknowledged that the road where the incident occurred had been the subject of "a few problems and reports of… collisions that nearly occurred because of the darkness of the area." Concepcion Dep. at 60.

¶ 4    Plaintiff claims that WAPA had a duty to Plaintiff to maintain the streetlight, that WAPA breached that duty, causing the accident, injuries and the subsequent death of Oscar. WAPA seeks judgment as to the claims asserted against it in Count I (wrongful death), Count VI (survival action) and Count VII (negligence), alleging primarily that it owed no duty to Oscar. In the alternative, WAPA argues that Plaintiff's negligence claim must also fail because any acts or omissions of WAPA cannot be found to be a proximate cause of Plaintiff's damages.

## STANDARD OF REVIEW

¶ 5    Per Virgin Islands Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A movant is entitled to summary judgment if there is no triable issue of material fact." *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 658 (V.I. 2019) (citing *Rymer v. Kmart Corp.*, 68 V.I. 571, 575 (V.I. 2018)). The Court must view all the evidence in the light most favorable to the non-moving party when considering a motion for summary judgment. *Basic Servs., Inc.*, 71 V.I. at 659 (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014)). "Because summary judgment is a drastic remedy, *see Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981), it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008). The burden is on the moving party to demonstrate there are no genuine issues of material fact. *Martin v. Martin*, 54 V.I. 379, 388 (V.I. 2010). "Once the moving party has identified the portions of the record that demonstrate no issue of material fact, 'the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in his favor.'" *Rymer v. Kmart Corp.*, 68 V.I. 571, 576 (V.I. 2018) (quoting *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)). ("The non-moving party 'may not rest upon mere allegations, [but] must present actual evidence showing a genuine issue for trial.'") (quoting *Williams*, 50 V.I. at 194) (brackets in original). "Therefore, to survive summary judgment, the

nonmoving party's evidence must 'amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Kennedy Funding Inc. v. GB Props., Ltd,* 73 V.I. 425, 431 (V.I. 2020) (quoting *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001)).

## DISCUSSION

¶ 6    The elements of a negligence action are well-settled in the Virgin Islands: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 380 (V.I. 2014). The primary legal question before the Court on WAPA's Motion is whether WAPA owed Plaintiff's decedent a duty to maintain the streetlights where the accident occurred. WAPA argues that under the public duty doctrine, it did not owe an individual duty to Oscar and therefore Plaintiff cannot establish a claim for negligence. Secondarily, WAPA argues that any of its acts or omissions on these facts cannot be deemed a proximate cause of Plaintiff's damages.

### *Duty*

¶ 7    For Plaintiff to present a viable claim against WAPA, he must establish that WAPA owed a duty to Crescentus Oscar. "[W]hether a duty exists, and the nature of the legal duty, is generally a question of law to be determined by the Court." *Robbins v. Port of Sale,* 2018 V.I. LEXIS 110, *9 (V.I. Super. 2018). If such a duty exists, the trier of fact must determine whether the duty was breached and, if so, whether such breach was the cause of Plaintiff's damages.

¶ 8    WAPA points to the fact that it was established in 1964 by the Virgin Islands legislature as "a public corporation and autonomous governmental instrumentality" to serve the public "purpose of developing and providing water and electric power services for the people of the Virgin Islands." *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.,* 49 V.I. 478, 480 (V.I. 2008) (citing 30 V.I. Code §§ 103, 105). Because it is a public entity performing duties for the benefit of the general public, WAPA argues that it owed no individual duty to Oscar, by virtue of the common law public duty doctrine.

¶ 9    It is true that the legislature declared that providing adequate electrical power "is essential to the public welfare and the economic health of the Virgin Islands;" that inadequate electric power systems constitute "a menace to the health and safety" of the people of the Virgin Islands; that the

"... operation, repair maintenance and use of water and electric power systems in the Virgin Islands... will protect the public health and safety...;" that the powers conferred to WAPA "are for public uses and purposes and are proper governmental functions...;" and "are declared to be necessary in the public interest... ." 30 V.I. Code § 101(a), (c), (d), (e) and (f).

¶ 10     Despite the fact that WAPA performs functions that are essential to the public wellbeing, it is not the government or a part of the government, but rather "a public corporation and autonomous governmental instrumentality," with the right and power "to sue and be sued in its corporate name." 30 V.I. Code §§ 103(a), 105(4). Further, "[n]o officer, board, commission, department or other agency or political subdivision of the Virgin Islands shall have jurisdiction over the Authority ... ." 30 V.I. Code § 121(a). "Nothing in this chapter shall be construed as exempting the Virgin Islands Water and Power Authority from any law made specifically applicable thereto or generally applicable to public utilities, or independent instrumentalities of the Government ... ." 30 V.I. Code § 122.

¶ 11     WAPA urges, nonetheless, that because it performs a public function in providing streetlights, even though autonomous from the government, it nonetheless is protected from liability here by the public duty doctrine. *See Turbe v. Gov't of V.I. and V.I. Water and Power Auth.*, 938 F.2d 427, 430 (3d Cir. 1991) (public duty doctrine "is generally applied to public entities as well as private individuals" performing public functions) (citations omitted). The public duty doctrine argued by WAPA is set forth in RESTATEMENT (SECOND) OF TORTS § 288(b), as follows: "The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively... (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled *only as members of the public*" (emphasis added).

¶ 12     Some 35 years ago, the Third Circuit Court of Appeals affirmed the grant of summary judgment in favor of the government, adopting the public duty doctrine because "[t]he Virgin Islands legislature has adopted as 'the rules of decision in the courts of the Virgin Islands' the common law as expressed in the American Law Institute's Restatements . . . in the absence of local laws to the contrary." *Perez v. Gov't of the V. I.*, 847 F.2d 104, 105-06 (3d Cir. 1988) (citing 4 V.I. Code § 4). The court held that "a duty owed by the governmental entity to the public in general

cannot be the basis of a negligence action, although a duty owed to individual members of the public based on a special relationship can be the basis of such an action." *Id.* at 105 (citations omitted). Specifically, the court determined that the plaintiff in *Perez* had not shown the existence of any statutory or other special relationship to establish a duty owed to him individually, and "conclude[d] that the public duty doctrine precluding suit for governmental negligence based only on the Government's failure to comply with a duty owed to the public in general, expressed in the Restatement and generally applied in the United States, remains the rule of decision in the Virgin Islands." *Id.* 847 F.2d at 107.

¶ 13    Several years later, in *Turbe*, the Third Circuit affirmed a judgment on the pleadings of the District Court in favor of WAPA against a plaintiff who claimed that WAPA's failure to maintain streetlights was a cause of injuries received in an assault on a dark street. The court held in reliance on the RESTATEMENT (SECOND) OF TORTS that "WAPA can be held liable in this case only if it owed a legal duty to Turbe on the facts alleged in the complaint," noting specifically that there existed "no explicit statutory provision requiring WAPA to repair broken street lights," and that the plaintiff failed to establish that WAPA had any "special relationship" with him that could have imposed a duty on WAPA. *Turbe*, 938 F.2d at 429. Noting that the public duty doctrine had been "questioned or abolished" in some jurisdictions, the court relied upon its precedent in *Perez*, to hold that "an individual may not sue upon a duty that is owed only to the public in general." *Id.* at 430.

¶ 14    In *DeJesus v. V.I. Water & Power Auth.*, 55 V.I. 402 (V.I. Super. 2011), the Superior Court rejected WAPA's argument that the public duty doctrine shielded it from liability arising from injury to a landscaper who had come into contact with an electrified guy wire supporting one of its utility poles. The *DeJesus* court noted WAPA's autonomy from the government and that, by endowing WAPA with the general power "to sue and be sued," the legislature had specifically waived the same claim that WAPA originally raised in this case, that it is covered by sovereign immunity and the Tort Claims Act (33 V.I. Code § 3401, *et seq.*) applicable to the Government of the Virgin Islands, citing *Cyprian v. Butcher*, 53 V.I. 224, 234 (V.I. Super. Ct. 2010).

¶ 15    As in *DeJesus*, WAPA contends here that the public duty doctrine prohibits Plaintiff's claim, precluding suit alleging its negligence for failure to comply with a duty owed to the public

in general. But, the doctrine does not apply when a governmental entity functions in the same manner as a private entity, and it may be held liable in the same manner as a private entity for negligence in the performance of those activities. In *DeJesus*, the court found that WAPA's operation of its facilities was "not exclusively a public function," and held that "the public duty doctrine does not shield WAPA from liability in this case." 55 V.I. at 412 (citations omitted). The factual distinction from this case is significant. In *DeJesus*, WAPA's alleged negligence was in maintaining its own equipment with which the plaintiff came into contact. Here, Plaintiff alleges that WAPA was negligent in performing a statutorily imposed duty causing the death of a person to whom that duty was owed.

¶ 16    The cited cases all mechanistically adopted the public duty doctrine, relying upon 1 V.I. Code § 4, accepting the premise that the RESTATEMENT (SECOND) OF TORTS constituted the rules of decision in Virgin Islands courts. All these cases were decided prior to the decisions of the Supreme Court of the Virgin Islands in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011) and *Gov't of the V.I. v. Connor*, 60 V.I. 597 (V.I. 2014). *Banks* held that the Supreme Court, as the highest local court with the inherent authority to shape Virgin Islands common law, is not bound by any decisions based upon the Restatements. *See Banks,* 55 V.I. at 984. In *Conner*, the Court explained that in enacting legislation establishing the Supreme Court in 2004 (4 V.I. Code § 21), the legislature implicitly repealed 1 V.I. Code § 4. 60 V.I. at 600.

¶ 17    Generally, this Court is bound by precedent from the Third Circuit interpreting the common law, rendered while that court sat as the *de facto* court of last resort in the Virgin Islands, unless and until the Supreme Court addresses the issue discussed there. *Najawicz v. People of the Virgin Islands*, 58 V.I. 315, 328 (V.I. 2013); *see also In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009). Because the Third Circuit's opinions in *Perez* and *Turbe* "automatically and mechanistically appl[ied] the Restatements of the Law"[4] in ruling upon the validity and applicability of the public use doctrine, those opinions are not considered binding precedent considering *Banks* and its progeny.

¶ 18    In this context in the absence of binding precedent, to the extent that we are called upon to determine the applicability of the common law public use doctrine, we would normally be required

---

[4] *Connor*, 60 V.I. at 599.

to conduct a *Banks* analysis to determine whether that doctrine represents the soundest rule for the Virgin Islands.[5]

¶ 19    However, the Supreme Court has had the opportunity to review WAPA's obligations regarding streetlights pursuant to the provisions of titles 30 and 31 of the Virgin Islands Code. In *Pickard-Samuel v. Gov't of the V.I.*, 2010 V.I. Supreme LEXIS 19 (V.I. 2010), the Supreme Court reversed the trial court's summary judgment in favor of WAPA in a case where the plaintiffs claimed that malfunctioning streetlights contributed to an accident and their damages. The accident occurred in 1999, prior to the January 30, 2002 enactment of Act No. 6486 that transferred the responsibility for the installation and maintenance of streetlights from the Department of Public Works to WAPA.[6] As such, on the date of the accident, WAPA "did not possess an explicit statutory duty to maintain streetlights in the territory." *Id.* at *9. But because WAPA failed to carry its initial burden to demonstrate that there was no genuine issue of material fact in dispute as to the issue of whether WAPA had voluntarily assumed to perform DPW's duty to the plaintiffs, the Supreme Court vacated the trial court's summary judgment in favor of WAPA.

¶ 20    Plaintiff claims here that WAPA owed to Crescentus Oscar "an explicit statutory duty to maintain streetlights in the territory." The statutory obligation on WAPA "to install and maintain adequate streetlights" (30 V.I. Code § 105 (19)) is further described in 30 V.I. Code § 105 (12): "... the Authority shall install electrical poles and power lines and maintain and install street lights at no cost to its customers..."[7] The statutorily mandated provision of streetlights is a service provided, without cost, by WAPA intended to provide illumination and to enhance safety on public roads. *See* WAPA 30(b)(6) Hedrington Dep. at 30. As a driver on the roads of the territory, Oscar

---

[5] In review of the proposed application of a common law rule without binding precedent, trial "courts should consider 'three non-dispositive factors' to determine Virgin Islands common law: '(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Connor*, 60 V.I. at 600 (citations omitted).

[6] Act No. 6486 repealed the former 31 V.I. Code § 2 that had assigned the responsibility for "the installation of adequate street lights in the urban and rural residential sections of the Virgin Islands" to the DPW through the Governor. The Act also amended 30 V.I. Code § 105 by adding a new subsection granting to WAPA all rights and power necessary or desirable to carry out the purpose: "(19) to install and maintain adequate street lights in the urban and rural residential sections."

[7] A "customer" is defined as "A buyer or purchaser of goods or services; esp., the frequent or occasional patron of a business establishment...." BLACK'S LAW DICTIONARY 468 (10th ed. 2014). In turn, a "patron" is defined, *inter alia*, as a "licensee invited or permitted to enter leased land for the purpose for which it is leased." *Id.* at 1308.

was a "customer" of WAPA's service. He was invited or permitted to use the roadways that were to be illuminated by WAPA, pursuant to its statutory obligation to install and maintain streetlights. WAPA had a specific statutory duty to drivers on the public roads, including Oscar, to install and maintain streetlights.

¶ 21     The Court determines as a matter of law that the statute imposes a legal duty on WAPA to "maintain adequate streetlights," but the nature of that duty to "maintain" is not defined. "The nature of the legal duty owed by a defendant is generally a question of law." *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.,* 52 V.I. 410, 420 (V.I. 2009) (citing *Turbe,* 938 F.2d at 429). The Supreme Court has recognized that "foreseeability permeates every element of a negligence claim," including the element of duty. *Machado,* 61 V.I. at 394 (citing *Renslow v. Mennonite Hosp.,* 367 N.E.2d 1250, 1258 (Ill. 1977)) ("[T]here is foreseeability, the touchstone of the quality of an act as negligence, the most important test in determining [the existence of] duty.").

¶ 22     Arguably, common sense informs that safety is enhanced when streetlights on the public roadways are properly illuminated and, conversely, public safety is compromised, and accidents are more foreseeable when existing streetlights are not providing illumination. WAPA's representative confirms that the purpose of street lighting is "[t]o provide proper illumination on all public and private streets. Safety." WAPA 30(b)(6) Hedrington Dep., at 30. Similarly, WAPA's line superintendent testified to the obvious – the purpose of streetlights is "[t]o have the road lit." Disputed SOF, Exh. 1, Deposition of Irving Francis, at 46-47.

¶ 23     The Court finds that WAPA's statutory duty to install and maintain adequate streetlights includes the duty to use reasonable care in the installation and maintenance of the streetlights to provide proper illumination on the public roads for the safety of drivers using those roads. Because of this finding, WAPA's Motion will be denied with regard to its claim that it owed no duty to Plaintiff's decedent. It remains an issue to be determined by the trier of fact whether or not WAPA breached that duty.

¶ 24     On the facts of this case, in light of the finding that WAPA possessed "an explicit statutory duty to maintain streetlights"[8] that extended to Oscar as a driver on the public road, it is

---

[8] *Pickard-Samuel,* 2010 V.I. Supreme LEXIS 19, at *9.

unnecessary to conduct a *Banks* analysis to determine whether the public duty doctrine constitutes the best rule for the Virgin Islands.[9]

### *Causation*

¶ 25    As alternate grounds supporting its Motion, WAPA argues that its negligent acts and omissions, if any, were "secondary, passive and subordinate to the primary, active and intervening causation of the negligent acts and omissions" of Oscar and Butcher, and that the lighting was not the proximate cause of Plaintiff's damages. Memo in Support, at 9.

¶ 26    "In order for the negligent act to be regarded as the cause in fact of the injury, it must be shown that the injury would not have occurred but for the act... . If there are multiple negligent acts that could have caused the injury, then the negligent conduct must be shown to have been a substantial factor in causing the harm." *Brady v. Cintron*, 55 V.I. 802, 823-24 (V.I. 2011) (citation omitted). "Proximate cause is established where the party who bears the burden shows that an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act." *Miller v. V.I. Wheel Estate, LLC*, 75 V.I. 331, 337 (V.I. 2021) (citation omitted).

¶ 27    Without citation to the record, WAPA argues that Oscar had to pass beyond an "obstructive hill" before "Butcher was able to clearly view the Oscar vehicle." Therefore, it was "geography, not lamination [sic], [that] provided insufficient time for Butcher to avoid the impact once Oscar turned across his lane of traffic." Memo in Support, at 10-11. Butcher responded to an interrogatory

---

[9] Were a *Banks* analysis deemed necessary or advisable, the Court notes that the clear trend of persuasive case law from other jurisdictions is to reject the public duty doctrine. The doctrine "in recent years has been rejected or abolished by most courts considering it." *Hudson v. Town of E. Montpelier*, 638 A.2d 561, 566 (Vt. 1993) (citation omitted). It has been noted that the public duty doctrine's "duty to all, duty to no-one" mantra "is in reality a form of sovereign immunity... in effect, it resurrects the governmental immunities that have been abrogated or limited by most jurisdictions over the last thirty-five years." *Ficek v. Morken*, 685 N.W.2d 98, 106 (N.D. 2004) (citing *Adams v. State*, 555 P.2d 235, 241 (Alaska 1976)). In establishing WAPA as an autonomous instrumentality, the legislature specifically granted it the right and power to sue and be sued. The Court is loathe to provide a layer of immunity by judicial fiat that the legislature specifically declined to provide to WAPA. Courts have concluded that "the underlying purposes of the public duty rule are better served by the application of conventional tort principles and the protection afforded by statutes governing sovereign immunity than by a rule that precludes a finding of an actionable duty on the basis of the defendant's status as a public entity." *Ficek v. Morken*, 685 N.W.2d at 105. As noted, the ruling here makes a *Banks* analysis superfluous, and the Court need make no determination on the propriety of the public duty doctrine as the best rule for the Virgin Islands.

that he first saw Oscar's vehicle "about 60 feet away from me at the time." In deposition, Butcher testified that he first noticed Oscar's vehicle "[w]hen he was right up on me at the collision." Butcher Dep. at 21, 23. Further, in response to a question whether he first saw Oscar's vehicle when it was one car length away, Butcher responded "[w]hen we collide – when we came in together, not when – I saw him a distance. We came into contact, it was about a car." *Id.* at 26. This seemingly inconsistent testimony is clearly insufficient to determine as a matter of law that the lighting was not a causative factor in the collision. The determination of this genuine dispute of material fact is necessarily left to the jury.

¶ 28    WAPA also argues that even if the streetlight was not functional, two intervening causes relieve it of liability since its negligence, if any, could not have been the accident's proximate cause. Specifically, WAPA cites Oscar's act of "trying to make a right turn into DPW parking lot, chose to make the right turn without ensuring there were [sic] no oncoming traffic." Second, "Butcher, drove his vehicle in a manner that was above the 35mph speed limit (driving at 58 mph) and in so doing struck the left side of Oscar's vehicle so as to create an impact propelling Oscar's vehicle to a resting point approximately 50 feet." Memo in Support, at 11.

¶ 29    In a first-degree murder criminal case where the cause of death was in issue, the Supreme Court determined that the defendant must prove the existence of three elements to establish that an independent intervening cause of death to relieve him of responsibility for his conduct: "(1) the defendant must not participate in the intervening cause; (2) the intervening cause is one but for which the death would not have occurred; and (3) the intervening cause must not have been reasonably foreseeable. An intervening cause is one that interrupts the natural and probable sequence of events following the defendant's acts and intervenes to cause the death. An intervening cause destroys the causal connection between the defendant's acts and the victim's injury, thereby becoming the cause of the injury." *Francis v. People of the Virgin Islands*, 56 V.I. 370, 381 (V.I. 2012).

¶ 30    In effect, WAPA urges that proximate cause cannot be established on these facts because, in light of the intervening acts of Oscar and Butcher, Plaintiff cannot meet his burden of showing that WAPA's negligence, if any, produced the accident in a natural and continuous sequence that would not have occurred without that negligence. *See Miller v. V.I. Wheel Estate, LLC*, 75 V.I. at

337. However, if those intervening acts were reasonably foreseeable, they will not be seen to have interrupted the natural and continuous sequence of events leading to Plaintiff's damages. "Simple negligence that contributes to the [injury] is foreseeable and, as a matter of law, cannot be an independent intervening cause. However, gross negligence is unforeseeable behavior, and it may serve as an intervening cause. Gross negligence is conduct beyond simple negligence showing an extreme departure from the ordinary standard of care." *Francis*, 56 V.I. at 381-82 (citing *People v. Lopez*, 97 P.3d 277, 282 (Colo. App. 2004)).

¶ 31    Gross negligence is defined in the Virgin Islands as "wanton, reckless behavior demonstrating a conscious indifference to the health or safety of persons or property… gross negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention." *Brathwaite v. Xavier*, 71 V.I. 1089, 1110-11 (V.I. 2019) (citation omitted).

¶ 32    In the *Lopez* case cited favorably by the Supreme Court in *Francis*, the Colorado Court of Appeals reviewed the appeal of a defendant convicted of vehicular homicide for driving his car, while intoxicated, at high speed into the vehicle in which the victim was a passenger. The car struck by the defendant had turned left at an intersection into the path of oncoming traffic where it was struck by the defendant. The court rejected the claim on appeal that the trial court erred in declining to give an intervening cause instruction, holding that "the intervening event was foreseeable because 'even if [the driver] made misjudgments, nothing in the record shows that her decision [ ] to turn left … constituted an extreme departure from the ordinary standard of care sufficient to support a finding of gross negligence.'" *Francis*, 56 V.I. at 382 (quoting *Lopez*, 97 P.3d at 278, 282).

¶ 33    Oscar's right turn into the path of Butcher's vehicle and Butcher's operation of his vehicle in excess of the applicable speed limit may both constitute acts of negligence that contributed to the incident and Oscar's death. Indeed, Plaintiff's Second Amended Complaint alleges the negligence of Butcher, and WAPA and Butcher have both affirmatively asserted Oscar's negligence as a cause of the incident. Yet the allegations of negligence by Oscar and Butcher in the operation of their vehicles cannot be seen as a matter of law to constitute acts of "wanton,

*Theodore Cyprian v. Virgin Islands Water and Power Authority*; SX-2008-CV-00515
Page 13 of 13
**Memorandum Opinion and Order**

**2022 VI SUPER 99**

reckless behavior demonstrating a conscious indifference to the health or safety of persons or property." *Brathwaite*, 71 V.I. at 1110.

¶ 34    If a litigant produces evidence sufficient to establish a prima facie case of gross negligence, the issue of whether a party's action constitutes gross negligence is generally left to the fact finder. "Whether these allegations are credible, or amount to the level of recklessness required for a finding of gross negligence, is a matter for the jury to determine." *Salkeld v. Marriott Ownership Resorts St. Thomas*, 2020 VI SUPER 81U, ¶ 11 (V.I. Super. 2020).

¶ 35    On the facts in the record, the acts of Oscar and Butcher cannot be seen as a matter of law to constitute gross negligence and intervening causes to negate any proximate causation that may be found to have resulted from any negligence of WAPA. Accordingly, WAPA's Motion also fails with respect to its claim that its negligence, if any, cannot be found to be a proximate cause of Plaintiff's damages.

## CONCLUSION

¶ 36    In reviewing WAPA's Motion, the Court determines whether there exist genuine disputes of material fact that would impact the outcome of the case under applicable law, without weighing the credibility of the evidence. Any conflicting allegations, if properly supported by the record, are resolved in favor of Plaintiff as the nonmoving party and all inferences from the evidence are drawn in favor of the nonmovant. The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. For the reasons set out above, the Court finds that WAPA has not produced evidence to demonstrate that there are no issues of material fact in dispute and that it is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Defendant WAPA's Motion for Judgment on the Pleadings (Motion for Summary Judgment) is DENIED.

DATED: December 22, 2022.

DOUGLAS A. BRADY, JUDGE

ATTEST: TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor
12 /27/2022

**Distribution List:**
Pamela Lynn Colon, Esq.
Dionne Gaile Sinclair, Esq.